UNION CARBIDE CORPORATION *v.* AETNA CASUALTY
AND SURETY COMPANY ET AL.
(13680)
(13681)
(13682)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued June 9—decision released July 25, 1989

*James F. Stapleton,* with whom were *Stefan R. Underhill, S. Kim Brunstad* and, on the brief, *Thomas J. Groark, Jr., Scott P. Moser, Kenneth W. Ritt, John R. Fitzgerald, Constance L. Epstein, Jack G. Steigelfest* and *Paul A. Scholder,* for the appellants (named defendant et al.).

*Sheldon Karasik,* pro hac vice, *Alan C. Nessman,* pro hac vice, and *Craig R. Brown,* pro hac vice, with whom were *Bruno deBiasi* and, on the brief, *Peter I. Sheft, Robin Stone Einbinder, Howard K. Fishman, R. Cornelius Danaher, Jr., Ralph G. Eddy, Timothy C. Russell, Peter D. Clark* and *Kimball Ann Lane,* for the appellees (defendant AIU Insurance Company et al.).

PETERS, C. J. The dispositive issue in this appeal is whether the trial court abused its discretion in granting a motion to dismiss on the ground of forum non conveniens. The plaintiff, Union Carbide Corporation, brought an action seeking a declaratory judgment[1] to determine its insurance coverage for reimbursement of damages and costs associated with its toxic waste

---

[1] The plaintiff brought its action pursuant to General Statutes § 52-29 and Practice Book §§ 388 through 394.

disposal activities at various sites throughout the country and in the Commonwealth of Puerto Rico. The defendants are 115 insurance companies that, since 1944, have insured the plaintiff under comprehensive general liability insurance policies, umbrella policies, and excess insurance policies. In response to the plaintiff's action, eighty-six defendants filed counterclaims seeking a declaration that they were not obligated to provide the insurance coverage sought by the plaintiff. After the closing of the pleadings, thirteen defendants filed a motion, to which the plaintiff and fifty-five other defendants objected, for dismissal of the plaintiff's complaint on the ground that Connecticut was not a proper forum for this action. The trial court, after a hearing, granted the motion and dismissed the action in its entirety. Although four appeals were initially filed from this judgment, the plaintiff withdrew its own appeal. The three remaining appeals, filed separately by the named defendant and two groups of insurance companies, were consolidated, expedited and transferred to this court pursuant to Practice Book § 4023. We find no error.

The relevant facts are undisputed. The plaintiff's complaint sought reimbursement for outstanding claims for environmental property damages and cleanup costs relating to its hazardous waste disposal activities since 1944 at thirteen sites, all outside of Connecticut.[2] The plaintiff, a New York corporation, moved its corporate headquarters from New York to Connecticut in 1980. The defendant insurance corporations are headquartered in various locations in this country and abroad. Only four of the defendants have their head-

[2] The toxic waste sites are located in seven states and the Commonwealth of Puerto Rico: three in North Carolina, two each in Ohio, Texas and Puerto Rico, and one in Indiana, New York, Colorado and West Virginia. With the exception of the three sites in North Carolina, one site in Ohio, and the only site in Indiana, the landfills are owned as well as operated by the plaintiff.

quarters in Connecticut, but that number includes the named defendant, which is the issuer of primary comprehensive general liability policies that cover all thirteen sites. Most of the 2116 insurance policies under which the plaintiff seeks coverage were not specifically issued to cover particular sites.

Despite the fact that the long arm statute, General Statutes § 52-59b, conferred jurisdiction on the trial court over all the defendants, the court granted the motion to dismiss filed by thirteen defendants. Concededly, the court had the authority to entertain and adjudicate this motion to dismiss. "The common law principle of forum non conveniens provides that a court 'may resist *imposition* upon its jurisdiction' even when it has jurisdiction. (Emphasis added.) *Gulf Oil Corporation* v. *Gilbert*, [330 U.S. 501, 507, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)]." *Brown* v. *Brown*, 195 Conn. 98, 108, 486 A.2d 1116 (1985).

The trial court's thoughtful and thorough seventy-nine page memorandum of decision documents the reasons for its action. Relying upon the methodology suggested by *Gulf Oil Corporation* v. *Gilbert*, supra, 508–509, the court first considered the availability of an alternate forum for adjudication of this law suit, and concluded that the courts of the seven states and Puerto Rico, where the thirteen toxic waste sites are located, would have jurisdiction over this litigation.

The trial court then went on to examine those private and public interest factors that *Gulf Oil Corporation* v. *Gilbert*, supra, directs a court to balance. It emphasized the significance of the following five factors, which, inter alia, make Connecticut an inconvenient forum: (a) resolution of the coverage issues under the various insurance policies would in many cases entail thirteen site-specific factual inquiries into activities unrelated to Connecticut; (b) questions of law

relating to resolution of the coverage issues would be governed, under applicable principles of conflict of laws, by the substantive law of states other than Connecticut; (c) many unwilling witnesses connected with operations at or near the thirteen toxic waste sites would not easily be compelled to attend a trial in Connecticut; (d) a single trial adjudicating all of the issues would take much longer, and be much more complicated, than a series of trials in the states where the toxic waste sites are located; and (e) court congestion in Connecticut would delay resolution of this litigation. The court concluded that these considerations outweighed both of the principal competing interests that it identified: the private interest of willing witnesses who wanted to avoid the costs of travel and repetitive testimony; and the special interest of the plaintiff in its selection of an appropriate forum.[3]

Finally, the court noted that well established limitations on recourse to declaratory judgments lent further support to dismissal of this case. The court referred to numerous cases invoking the rule of Practice Book § 390 (c) that "[t]he court will not render declaratory judgments . . . where the court shall be of the opin-

---

[3] The court also considered a number of other factors that are of lesser significance in the circumstances of this case. It found that: (a) most of the relevant documentary evidence is in the possession of third parties located near the toxic waste sites and would be difficult to produce in Connecticut; (b) the cost of transporting out-of-state witnesses to Connecticut would be greater than the expense of requiring some of the plaintiff's employees to testify in other states; (c) the ability of the factfinder to view the sites at issue would be handicapped if the case were tried in Connecticut; (d) dividing the litigation into eight separate actions would not prevent any of the parties from obtaining a fair trial; and (e) residents of the Danbury judicial district have little interest in the plaintiff's insurance reimbursement claims for liabilities incurred in other states, whereas citizens of the states where the sites are located have a much greater interest. The trial court also found, on the other hand, that: (f) the plaintiff would be unlikely to have difficulty enforcing any judgment that it obtained in Connecticut against the defendants; and (g) the plaintiff had not acted upon any improper motive in bringing the action in Connecticut.

ion that the parties should be left to seek redress by some other form of procedure." See, e.g., *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* 173 Conn. 352, 360, 377 A.2d 1099 (1977); *Stevens' Appeal,* 157 Conn. 576, 579, 255 A.2d 632 (1969).

In their appeal, the appellants, those defendants that contest dismissal of the plaintiff's cause of action, ask us to review two claims of error. They maintain that the trial court's judgment: (1) fails to implement limitations imposed by the Connecticut constitution upon the doctrine of forum non conveniens; and (2) manifests an abuse of discretion under the common law doctrine of forum non conveniens. Only the second of these two claims is properly before us, however, since no constitutional issue was "distinctly raised" in the trial court, as Practice Book § 4185 requires.[4]

I

Before addressing the merits of the appellants' claim of abuse of discretion, we must consider whether, as the appellees maintain, supervening events have deprived this court of jurisdiction to hear this appeal. The appellees rely on two facts: the parties' negotia-

[4] The appellants concede that they did not cite to the trial court the "open courts" provision of the Connecticut constitution, article first, § 10, on which they now rely. We disagree that this issue was indirectly raised at trial by arguments relating to public policy considerations affecting forum non conveniens, because such considerations were related directly to the common law doctrine of forum non conveniens that the trial court applied.

This case, furthermore, does not warrant invocation either of the "exceptional circumstances" rule of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), or the "plain error" exception of Practice Book § 4185. We have repeatedly emphasized our disapproval of requests for appellate scrutiny of alleged errors of law raising newly discovered issues on which the trial court never had the opportunity to rule. This appeal does not fall within the narrow exception from this abiding principle that we have carved out for "egregious errors that undermine the fairness of a trial and cast doubt on the integrity of judicial proceedings." *State* v. *Hull,* 210 Conn. 481, 485, 556 A.2d 154 (1989); *Scott* v. *Barrett,* 212 Conn. 217, 222, 561 A.2d 941 (1989); see also *Roche* v. *Fairfield,* 186 Conn. 490, 505, 442 A.2d 911 (1982).

tion of the "Carbide Agreement," and the plaintiff's subsequent withdrawal of its appeal in this case. The "Carbide Agreement," voluntarily entered into by all of the parties on March 27, 1989, provides that, with respect to all the relevant insurance issues in this case, litigation will proceed in eight site-specific lawsuits filed, on or about February 15, 1989, in the eight jurisdictions in which the thirteen toxic waste sites are located. The plaintiff withdrew its appeal two days after the negotiation of the "Carbide Agreement." As a result of these developments, according to the appellees, the interests of the parties remaining in this appeal are not adverse, and none of the appellants, even those seven appellants that filed counterclaims at trial, can demonstrate sufficient "aggrievement" to justify this appeal. We are unpersuaded.

The "Carbide Agreement," in our view, does not dissipate the controversy between the parties about where this litigation should proceed. By its terms, the agreement contemplates a return to this state if the appellants succeed in overturning the judgment of the trial court. The fact that the agreement provides special, limited exceptions from this general principle only underscores the continued significance of the forum non conveniens question to the parties.[5]

---

[5] Paragraph 2 of the "Carbide Agreement" provides: "[Union Carbide Corporation] agrees not to oppose any attempt to expedite the appeal of the Connecticut Action. If an appeal of the Connecticut Action is successfully maintained, all discovery that shall have occurred in the State Court Actions prior to an appellate ruling reinstating the case in the trial court shall have the same force and effect as if taken in the Connecticut Action in accordance with the Connecticut Practice Book. Except as otherwise provided in this paragraph, if the Connecticut Action is reinstated in the trial court, the State Court Actions (except the New Jersey Action) shall be dismissed and litigation with respect to the sites involved in the State Court Actions shall proceed in the Connecticut Action. A State Court Action shall not be dismissed and litigation with respect to the sites involved in such a State Court Action shall not proceed in the Connecticut Action if (1) the final appellate ruling in Connecticut occurs less than 60 days prior

The plaintiff's decision to withdraw its appeal similarly does not eliminate the interest of those appellants who were counterclaimants below in having this court determine the validity of their preference for having this litigation continue in Connecticut. "Under our rules of practice, a counterclaim, if proper, is an independent action. See Practice Book §§ 116, 168, 169; *Hanson Development Co.* v. *East Great Plains Shopping Center, Inc.,* 195 Conn. 60, 63, 485 A.2d 1296 (1985); see also *Schurman* v. *Schurman,* 188 Conn. 268, 270, 449 A.2d 169 (1982)." *Home Oil Co.* v. *Todd,* 195 Conn. 333, 341, 487 A.2d 1095 (1985). The counterclaimants are aggrieved by the trial court's allegedly improper dismissal of their own independent actions. See *Malerba* v. *Cessna Aircraft Co.,* 210 Conn. 189, 192–93, 554 A.2d 287 (1989). Although the plaintiff's withdrawal has obvious significance for the substantive merits of the appellants' claim of abuse of discretion, it does not deprive the appellants of standing to pursue this claim here.

II .

We turn then to a review of the merits of the appellants' claim that the trial court abused its discretion in determining that Connecticut was an inconvenient forum for the present litigation. The appellants maintain that the trial court erred in: (1) failing to defer to the preference of the counterclaimants for having the

to a firm trial date established in such a State Court Action; or (2) if a party to a State Court Action establishes to the satisfaction of the trial court in Connecticut that, based upon the procedural posture of such action (expressly not based on the substantive law (including conflicts of law rules) of such State Court jurisdiction), proceeding with said action in Connecticut would be unduly prejudicial. In addition, if a potentially dispositive motion as to any party has been fully briefed in a State Court Action, that Action shall not be dismissed and litigation with respect to the sites involved shall not proceed in Connecticut (1) until the motion is finally decided and (2) subject to the preceding sentence; any such litigation which does proceed in Connecticut shall do so consistent with the ruling on the motion in the State Court Action."

litigation proceed in Connecticut; (2) designating not one but eight alternative forums as a viable alternative to the Connecticut forum; (3) speculating about the convenience of trials in the jurisdictions where the toxic waste sites are located; (4) concerning itself with the complexities inherent in the size of this litigation; and (5) considering the implications of Connecticut's crowded dockets for trial of this litgation in this state. We disagree that these claims of error, either singly or in toto, demonstrate a clear abuse of discretion.

As a common law matter, the doctrine of forum non conveniens vests discretion in the trial court to decide "where trial will best serve the convenience of the parties and the ends of justice." *Koster* v. *(American) Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 527, 67 S. Ct. 828, 91 L. Ed. 1067 (1947); *Brown* v. *Brown,* supra, 108–109 and n.17. As the trial court recognized, the guidelines stated in *Gulf Oil Corporation* v. *Gilbert,* supra, and restated in *Piper Aircraft Co.* v. *Reyno,* 454 U.S. 235, 257–62, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981), provide a useful frame of reference for the resolution of this question. It bears emphasis, however, that these guidelines begin with the proposition that the trial court's exercise of its discretion may be reversed only upon a showing of clear abuse. "[W]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." Id., 257. It bears equal emphasis that federally crafted guidelines do not impose binding directives upon our Connecticut common law, but rather should be viewed as illuminating the variety of competing private and public considerations that a trial court must weigh in the balance as it determines whether dismissal for forum non conveniens is warranted.

The appellants' first claim is that the trial court assigned insufficient weight to the counterclaimants'

interest in having the trial go forward in Connecticut. Although the trial court expressly considered the importance of the plaintiff's preference for a Connecticut forum, it did not separately address the similar preferences of the counterclaimants. The appellants have nowhere indicated in what manner, if any, the issues raised by the counterclaims have separate implications for forum non conveniens purposes. Indeed, the appellants' brief itself characterizes the counterclaims as mirroring the plaintiff's complaint. In these circumstances, the question now before us devolves into whether the trial court abused its discretion in giving insufficient weight to a preference that the plaintiff has now abjured. In light of the fact that none of the toxic waste sites is located in Connecticut, and that the plaintiff and some of the counterclaimants are content to have the litigation proceed elsewhere, we conclude that the appellants have shown no abuse of discretion on this score.

The appellants' second claim is that the trial court could not reasonably have determined that eight lawsuits outside of Connecticut would constitute a reasonable alternative to one lawsuit conducted in this state. They have, however, cited no authority for the proposition that only a unitary alternative site warrants dismissal on the ground that the local site is inconvenient. The availability of the eight alternatives is now confirmed by the "Carbide Agreement," to which the appellants have concededly subscribed. This case therefore does not present the same risk of excessive fractionalizing of claims that concerned the New Jersey court in *Westinghouse Electric Corporation* v. *Liberty Mutual Ins. Co.* 233 N.J. Super. 463, 559 A.2d 435 (1989).[6]

---

[6] *Westinghouse Electric Corporation* v. *Liberty Mutual Ins. Co.*, 233 N.J. Super. 463, 559 A.2d 435 (1989), concerned the litigation of toxic waste torts and environmental claims relating to eighty-one sites located in twenty-three states; nine of these sites were in New Jersey. The Appellate Divi-

If a redistribution of this litigation to eight alternative site-specific forums is therefore feasible, as the record amply demonstrates, the trial court's memorandum of decision includes careful consideration of the advantages that would flow from such a redistribution. The court considered such factors as the availability of site-specific witnesses, the significance of participation by local factfinders, the importance of documentary and deposition evidence, and the relative time required for site-specific as against comprehensive adjudication. The trial court's multifaceted analysis of this issue demonstrates no abuse of discretion.

The appellants' third claim is that the trial court indulged in unwarranted speculation in its assessment of the convenience of site-specific trials. At oral argument, however, the appellants, despite their insistence that there were commonalities about all the issues of insurance coverage, agreed that some site-specific questions would necessarily arise. They also agreed that principles of conflict of laws would preclude the applicability of Connecticut domestic law in the adjudication of any of these cases. Once these premises are established, the trial court's inferential findings about the significance of local witnesses and the desirability of access to the local site, which were crucial to the court's conclusion, do not strike us as impermissibly speculative. By necessity, a motion for dismissal on the ground of forum non conveniens must be heard on a record that is less specific than we would require for a trial on the merits. See *Piper Aircraft Co.* v. *Reyno,* supra, 258; *Fitzgerald* v. *Texaco, Inc.,* 521 F.2d 448, 451 n.3 (2d Cir. 1975).

sion found an abuse of discretion in the trial court's decision to invoke forum non conveniens to sever the claims relating to New Jersey sites from those relating to sites in other states. The plaintiff in that case was one of the parties pursuing the appeal.

The appellants' fourth and fifth claims concern the alleged impropriety of the trial court's consideration, as public factors to be weighed in the balance, of the complexities inherent in the size of this litigation and the burdens that it would impose on Connecticut's crowded dockets. While we agree with the appellants that these factors would not, by themselves, justify the conclusion that Connecticut is an inappropriate forum, we are not persuaded that they are entirely irrelevant; see *Gulf Oil Corporation* v. *Gilbert,* supra, 508–509; or that the trial court assigned them inordinate significance.

"Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of [the] remedy [of dismissal for forum non conveniens]. The doctrine leaves much to the discretion of the court to which [the] plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses." Id., 508. The appellants have not demonstrated such an abuse in this case.

There is no error.

In this opinion the other justices concurred.