UNITED TECHNOLOGIES CORPORATION & others[1] *vs.*
LIBERTY MUTUAL INSURANCE COMPANY & others.[2]

Suffolk. January 11, 1990. - June 11, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Insurance*, Comprehensive liability insurance, Coverage. *Conflict of Laws.*
*Jurisdiction*, Forum non conveniens.

This court, in recognizing a concept of partial forum non conveniens, re-
jected any suggestion that forum non conveniens is an all-or-nothing
doctrine or that an action or part of an action may be dismissed on
forum non conveniens grounds only if all the issues can be resolved in a
single alternative jurisdiction. [593]

Dismissal of an action involving a dispute between an insured (an alleged
polluter of the environment in more than twenty States) and its numer-
ous primary and excess coverage general liability insurers on the
ground of forum non conveniens was premature where, until the dispute
had matured so that the contested issues could properly be identified,
no reasoned determination could be made whether Massachusetts was
an inappropriate forum. [594-600]

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 24, 1987.

The case was heard by *John L. Murphy, Jr.*, J., on a mo-
tion to dismiss.

An application for an interlocutory appeal was allowed in
the Appeals Court by *Kent B. Smith*, J. The Supreme Judi-

---

[1]CTU of Delaware, Inc., Essex Group, Inc., Hamilton Standard
Controls, Inc., Otis Elevator Company, and United Technologies
Automotives, Inc., wholly owned subsidiaries of United Technologies
Corporation.

[2]Liberty Mutual Insurance Company was the plaintiff's primary general
liability carrier during the years involved in this case. Scores of insurance
companies that provided excess and umbrella coverage of UTC at various
times and in varying amounts also are defendants.

cial Court transferred the case on its own initiative.

*Peter J. Kalis* of Pennsylvania (*Thomas L. Crotty* with him) for the plaintiffs.

*Timothy C. Russell* of the District of Columbia (*T. Andrew Culbert* of the District of Columbia & *Michael S. Greco* with him) for Lumbermens Mutual Casualty Company.

*Thomas W. Brunner, Laura A. Foggan & Sharon Rau Dissinger* of the District of Columbia & *Michael R. Coppock*, for Maryland Casualty Company, amicus curiae, submitted a brief.

WILKINS, J. In *W.R. Grace & Co.* v. *Hartford Accident & Indem. Co., ante* 571 (1990), decided today, we considered an appeal from a judgment that dismissed a multiparty insurance coverage action on the ground of forum non conveniens. There, no party argued that the case should not be resolved in one forum. Instead, the dispute centered on whether Massachusetts was an appropriate forum. We held that the motion judge acted within his discretion, and committed no prejudicial error of law, in allowing the motion to dismiss.

This case presents a forum non conveniens issue in a different form. Like the *W.R. Grace* case, it is a multiparty, comprehensive general liability insurance coverage case. Unlike the *W.R. Grace* case, however, it presents a serious dispute whether the case should be decided in a single forum. The plaintiff insured, United Technologies Corporation and its subsidiaries, whom we shall collectively call UTC, argues that there are substantial, common questions of coverage presented by the defendants' comprehensive general liability policies issued to UTC, and only relatively unimportant factual disputes concerning the nature of the numerous underlying environmental damage claims against which UTC seeks defense and indemnity from the defendants. Some defendant insurers argue, on the other hand, not that some other forum would be a proper alternative, but rather that Massachusetts

is an inappropriate forum because the various insurance coverage questions are controlled by fact-specific determinations that should be made in each of the more than twenty jurisdictions in which environmental claims have been made against UTC. Accordingly, the appellee insurers argue that the motion judge was correct in dismissing the action on forum non conveniens grounds.[3]

We conclude that it was premature to dismiss this action on the ground of forum non conveniens. Until the dispute between UTC and its insurance companies has matured so that the contested issues can properly be identified, no reasoned determination can be made whether Massachusetts is an inappropriate forum. A more developed record may demonstrate that there are questions of policy interpretation and coverage that should be resolved in one action, that a declaratory judgment should be entered on those issues, and that any remaining issues that are fact-specific should be resolved in those jurisdictions where proof of those facts would be easiest and most economical. Such a procedure would recognize a concept of partial forum non conveniens. We thus reject any suggestion that forum non conveniens is an all-or-nothing doctrine or that an action or part of an action may be dismissed on forum non conveniens grounds only if all the issues can be resolved in a single alternative jurisdiction.

UTC seeks declaratory and monetary relief against insurance companies that provided it with comprehensive general liability insurance for approximately three decades. Claims have been made or are threatened against UTC with respect to the pollution of approximately seventy sites in more than

---

[3]As an amicus curiae, Maryland Casualty Company argues that, for the purposes of forum non conveniens, Connecticut would be an appropriate alternative forum and that Massachusetts is inappropriate. We, of course, deal only with the issues presented by the parties, and express no view on the possible claim that Massachusetts is an inappropriate forum for the unitary resolution of common issues, as opposed to Connecticut or New York.

twenty States.[4] Only three of the pollution sites are located in Massachusetts. UTC's primary insurer, Liberty Mutual Insurance Company (Liberty Mutual), is a Massachusetts-based company. UTC, whose headquarters is in Hartford, Connecticut, negotiated and annually renegotiated its basic general liability coverage from 1965 to 1986 with Liberty Mutual in Massachusetts. Marsh & McLennan, a New York-based insurance broker, negotiated UTC's excess and umbrella general liability insurance coverage. Only five of the more than 200 defendant insurers are Massachusetts companies. The amended complaint sets forth in detail the circumstances of each pollution claim made against UTC.

Lumbermens Mutual Casualty Company, joined by nineteen other defendants,[5] moved on the ground of forum non conveniens (and G. L. c. 223A, § 5 [1988 ed.]) to dismiss all UTC claims relating to hazardous waste sites located outside of Massachusetts. In his memorandum of decision, the motion judge discussed the general principles of law that this court has reiterated today in *W.R. Grace & Co.* v. *Hartford Accident & Indem. Co.*, *supra* at 571, and allowed the motion to dismiss. A Justice of the Appeals Court authorized an interlocutory appeal which we transferred here on our own motion.

---

[4]Initially, UTC also sought relief against its first-party property insurers for damage to UTC's own property. The judge dismissed those insurers from the case for a reason unrelated to the claims asserted here.

Carrier Corporation, a subsidiary of UTC, initially was a plaintiff. It had had its own insurance program, handled separately from UTC. The judge dismissed claims against Carrier's insurers from the case on forum non conveniens grounds. UTC has not appealed from that determination.

[5]Employers Reinsurance Corporation, Puritan Insurance Company, United Fire & Casualty Company, Imperial Fire & Casualty Company, Forum Insurance Company, AIU Insurance Company, American Centennial Insurance Company, American Home Assurance Company, Birmingham Fire Insurance Company, Buffalo Reinsurance Company, Granite State Insurance Company, The Insurance Company of the State of Pennsylvania, Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, Harbor Insurance Company, Republic Insurance Company, Royal Indemnity Company, and Aetna Casualty & Surety Company.

The motion judge relied principally on his conclusion that UTC's "claims involve not mere contract interpretation concerning the meaning of particular insurance policy provisions." He believed that UTC's claims had to "be decided on a case by case basis according to site-specific facts," even as to various coverage issues.[6] He said that Massachusetts had an extremely limited nexus with the events involved in this case, and believed that the case imposed a substantial burden on Massachusetts, including its courts and its treasury. He saw a major conflict of laws problem because "it is likely that the court would be required to apply different states' laws to the various site-specific coverage claims," citing *Bushkin Assocs. v. Raytheon Co.*, 393 Mass. 622 (1985).[7] He made no mention of the fact that the primary insurer, Liberty Mutual, is a Massachusetts company.

We are unable to discern on the record a basis for concluding that all aspects of this case should be fragmented into as many parts as there are jurisdictions in which the actual or alleged pollution sites are located. There must, of course, be an underlying claim before UTC may turn to any insurer for defense and indemnity protection, and, of course, the nature of that claim will determine whether an insurer has any obligation to UTC. We fail to see, however, a basis for the judge's conclusion that all issues of insurance coverage are predominantly site-specific.

In many cases, the nature and circumstances of the alleged pollution will be well documented in readily available litigation files or in government records, or both. The heavily contested issues in such cases will be coverage questions: policy interpretations and perhaps, as appears to be true in *W.R. Grace & Co. v. Hartford Accident & Indem. Co.*, *supra*, a

---

[6]He referred specifically to coverage issues such as whether there had been an "occurrence"; whether and when coverage was "triggered"; whether the "pollution exclusion" clause in the policy applies; and whether UTC had failed to disclose material risks to its insurers.

[7]He reasoned that "[t]he state where the waste site is located has the dominant, paramount interest in having its law apply to a coverage dispute involving that site."

contest over the failure of the insured to make proper disclosure to its prospective insurers of the nature of the risk to be covered. For the reasons we stated in the *W.R. Grace* case, there are strong arguments to support the resolution of common questions of law and fact in one proceeding. *Id.* at 579.[8] This case may well be such a proceeding.

The contested issues in this case have not, however, been identified. It was too early for the judge to conclude that issues concerning out-of-State pollution sites should not be decided here. A portion of a case like this one might beneficially be resolved in a single State, with the remaining issues left for determination elsewhere. The doctrine of forum non conveniens does not require that, before dismissal of an action, an alternative jurisdiction must be identified in which all the issues can be resolved. At some point, dispersed decision-making may be appropriate. After declaratory relief has been granted on insurance coverage questions, the allowance of a motion to dismiss on forum non conveniens grounds as to certain remaining issues may appropriately be conditioned on insurers' agreeing not to assert any defense elsewhere based on the statute of limitations or comparable policy provisions. To dismiss on forum non conveniens grounds when there is no other forum available for the resolution of the dispute would be of doubtful propriety. See Note, Forum Non Conveniens in the Absence of an Alternative Forum, 86 Colum. L. Rev. 1000 (1986).

In time, it may become clear in this case that there are no contested questions concerning the meaning of those policy provisions that set forth the insurers' duties to defend or to indemnify. Then, a motion to dismiss on forum non con-

---

[8]"Repeated relitigation of the common issues in a complex case unduly expends the resources of attorney and client, clogs already over-crowded dockets, delays recompense for those in need, and brings our legal system into general disrepute." See A.L.I., Complex Litigation Project, ch. 2, comment a, at 11 (Tent. Draft No. 1, 1989).

veniens grounds might appropriately be allowed in a judge's discretion.[9]

The judge relied, but not heavily, on a perceived problem of the choice of law in this case. We doubt that the law of the States in which the pollution sites lie will severally govern questions of policy coverage.[10] In *W.R. Grace & Co.* v. *Hartford Accident & Indem. Co., supra* at 585, we discussed the desirability of the substantive law of one jurisdiction governing the interpretation of all policies in cases like this. A choice of law decision made in one court as to all claims of coverage would more likely achieve that result than would dispersed decision-making. *Westinghouse Elec. Corp.* v. *Liberty Mut. Ins. Co.*, 233 N.J. Super. 463, 477 (App. Div. 1989). It is too early to determine, however, what substantive law should be applied. All we need say is that, at this point in this case, the choice of law problem that the motion judge perceived has not been shown to exist.

---

[9]In *Westinghouse Elec. Corp.* v. *Liberty Mut. Ins. Co.*, 233 N.J. Super. 463 (App. Div. 1989), the court dealt with a case somewhat similar to the case before us. The opinion commented on how, after the resolution of common issues, the final stage of the litigation might be handled by summary judgment as to certain claims or by the trial of prototype claims. *Id.* at 479. "It may also be that the court, in respect of some claims, will decide that its binding interpretative principle must be applied to a specific claim by litigation elsewhere and may accordingly frame its declaratory judgment as to those claims appropriately to reach that end." *Id.*

[10]The *Westinghouse* court said: "While not intending to deprecate the legitimacy of local concern for and control over its own environmental contamination, we nevertheless cannot conceive that the operative contract language in a single set of insurance policies issued by a group of insurers for the purpose of providing integrated comprehensive coverage for nationwide risks could mean something different in every state of the union. . . .

"In our view, the notion that the insured's rights under a single policy vary from state to state depending on the state in which the claim invoking the coverage arose contradicts not only the reasonable expectation of the parties but also the common understanding of the commercial community. It also seems to us anomalous, in conflict-of-law terms, to suggest that more than one body of law will apply to a single contract. The theme running through the federal mega-coverage cases is the assumption not only that state law will determine whose insurance law will govern the coverage dispute but also that it will be a single state's law, chosen in accordance with the applicable conflict principles of the forum." *Id.* at 476.

There is not much authority elsewhere concerned with the application of the doctrine of forum non conveniens to a dispute between an alleged polluter of the environment and its numerous primary and excess coverage general liability insurers. In *Westinghouse Elec. Corp.* v. *Liberty Mut. Ins. Co., supra,* the court reversed the dismissal on forum non conveniens grounds of all non-New Jersey-based coverage claims in two actions brought by an insured against 144 insurers that had issued some 300 insurance policies. *Id.* at 465. One action concerned coverage for some 3,000 toxic tort claims; another concerned environmental pollution cases involving eighty-one sites in twenty-three States. *Id.* at 466. A large proportion of the underlying claims had not been filed in New Jersey, and only nine of the eighty-one sites were located in New Jersey. *Id.* We agree with the conclusion of the New Jersey court that, where there are common issues, a single, comprehensive, definitive adjudication of an insured's rights under a comprehensive set of insurance policies is desirable. *Id.* at 470-471.[11]

In *Union Carbide Corp.* v. *Aetna Casualty & Sur. Co.,* 212 Conn. 311 (1989), the Supreme Court of Connecticut upheld the forum non conveniens dismissal of a case involving 115 insurers and over 2,000 policies but only thirteen hazardous waste sites in eight jurisdictions. The insured acceded to the lower court's conclusion, and only certain insurers appealed. *Id.* at 318. The court rightly rejected the idea that there must be "a unitary alternative site" in order to justify dismissal on forum non conveniens grounds. *Id.* at 320. We do not agree, however, with that court's apparent acceptance, as support for the discretionary dismissal of the actions, of the fact that "some site-specific questions would necessarily arise." *Id.* at 321. The appellant's concession that Connecticut domestic law would not apply to any of the coverage claims was relevant but certainly not the controlling

---

[11]We do not, however, join in the New Jersey court's assertion that forum non conveniens principles are inapplicable in a case like this. *Id.* at 470.

factor in the analysis. *Id.* We agree with the Connecticut court's statement that "the complexities inherent in the size of this litigation and the burdens that it would impose on Connecticut's crowded dockets" would not justify a forum non conveniens dismissal of an action but that those facts are not "entirely irrelevant." *Id.* at 322. The Connecticut court noted that the case before it did "not present the same risk of excessive fractionalizing of claims that concerned the New Jersey court in *Westinghouse Elec. Corp.* v. *Liberty Mut. Ins. Co.*" *Id.* at 320. The court also noted that in the New Jersey case the insured plaintiff pursued the appeal. *Id.* at 321 n.6.

The opinions of a panel of the United States Court of Appeals for the Fifth Circuit in *W.R. Grace & Co.* v. *Continental Casualty Co.*, 896 F.2d 865 (5th Cir. 1990), point to the difficulty a court faces in deciding whether to dismiss such an action in the exercise of its discretion. Although forum non conveniens was not involved in that case, the considerations bearing on the trial judge's exercise of discretion to dismiss that action were substantially the same as in a forum non conveniens analysis. The question before the court concerned a dispute between W.R. Grace & Co., a former seller of asbestos products, and its insurers, concerning numerous claims made by Texas school districts. The underlying claims had been settled. The trial judge thereafter declined to dismiss Grace's third-party complaint against its insurers for want of jurisdiction. On appeal, two judges concluded (1) that the dispute was between Grace, a New York company, and its New York insurers and was governed by New York law (*id.* at 872), and (2) that exercising ancillary jurisdiction in the Federal court over that dispute was not a justifiable application of the trial judge's discretion. *Id.* at 877. The majority pointed to numerous unresolved issues of insurance law. *Id.* at 874-877 ("hotly disputed issues that are important to the development of New York insurance law"). The dissenting judge, however, concluded that, although New York law governed the dispute, the trial judge did not abuse his discretion in not dismissing the action. *Id.* at 877. He saw the dispute

as one involving the nature of the claims made by Texas school districts, and he extensively explained why, in his view, the insurance coverage questions required detailed proof of the nature and circumstances of those claims. *Id.* at 878-880.

In the Texas case, we see that, even after the underlying asbestos claims had been fully identified in litigation and settled, and even after the insured and its insurance companies had fully identified the coverage issues in dispute, the court could not agree on whether the dispute principally involved site-specific fact-finding issues or policy construction questions that were only incidentally fact-oriented. Surely, the record in this case must be expanded considerably before any decision properly may be made on whether to dismiss the action on the ground that each pollution site presents unique coverage problems.

We conclude that dismissal of this action was error because, as a matter of law, the record does not support the order to dismiss. The judge abused his discretion in allowing dismissal only in the sense that, under the rule of law we have announced in this opinion, he acted before the record warranted dismissal. The judgment dismissing this action on the ground of forum non conveniens is vacated, and the case shall proceed in the Superior Court.

*So ordered.*