[No. B077117. Second Dist., Div. One. May 31, 1995.]

FORD MOTOR COMPANY, Plaintiff and Appellant, v.
INSURANCE COMPANY OF NORTH AMERICA et al., Defendants and
Respondents.

 

## COUNSEL

Latham & Watkins, G. Andrew Lundberg and David M. Chernek for Plaintiff and Appellant.

Crowell & Moring, Andrew H. Marks, Stephen G. Harvey, Steven A. Fink, Steptoe & Johnson, Christopher T. Lutz, Charlson, Revich & Williams, Richard D. Williams, Richard Giller, LeBouef, Lamb, Greene & MacRae, Dean Hansell, Jean M. Costanza, Aaron C. Gundzik, Smith, Breenan & Dickerson, Philip E. Smith and Stephen Kaufman for Defendants and Respondents.

## OPINION

**SPENCER, P. J.—**

### INTRODUCTION

Plaintiff Ford Motor Company appeals from an order to dismiss entered after defendants' motions to dismiss on the ground of forum non conveniens were granted.

### PROCEDURAL AND FACTUAL BACKGROUND

At approximately the same time, in November 1992, plaintiff filed four actions in which it sought to establish its right to insurance coverage for liabilities arising from the environmental contamination of various plant sites. In addition to the instant action, which sought a declaration of rights as to three California sites, plaintiff filed two actions in New Jersey and one in Kentucky (Ford Motor Co. v. Insurance Co. of North America (Cir. Ct. Bullitt County, Ky., 1992, No. 92-CI-0619)). At issue in the Kentucky action are three environmentally contaminated sites located in that state. At issue in Ford Motor Co. v. Certain Underwriters at Lloyd's, London (Super. Ct. Middlesex County, N.J., 1992, No. L-11463-92) are four sites located in New Jersey and a site located in Ohio. Ford Electronics & Refrigeration Corp. v. Insurance Co. of North America (Super. Ct. Camden County, N.J., 1992, No. L-11640-92) concerns two third party waste disposal sites in New Jersey and one in Pennsylvania that received waste from the same facility as did the New Jersey sites. All of these actions have some common defendants.

Plaintiff no longer operates the three sites at issue in the instant action. Plaintiff operated the Milpitas site as a passenger automobile and commercial vehicle assembly plant from 1955 to 1983. After the discovery of

groundwater contamination at the site in the early 1980's, the California Regional Water Quality Control Board, the Santa Clara Valley Water District and the Milpitas Fire Department began investigating the contamination. Since then, they have undertaken remedial measures. To date, the cost of the remediation exceeds $5 million; the final total could be substantially greater.

A subsidiary of plaintiff, Ford Aerospace Corporation, operated a facility in Palo Alto for the fabrication of communication satellites and equipment from 1957 to 1988. Groundwater and soil contamination were discovered at this facility in the late 1980's. After investigating the matter, the Regional Water Quality Control Board began remediation. To date, the remediation costs exceed $750,000; the final total cost is expected to be several million dollars.

Ford Aerospace Corporation also operated a research and development facility in Newport Beach from 1957 to 1990. Plaintiff sold this subsidiary to Loral, Inc., in 1990, but plaintiff retained an interest in the property. Since the discovery of soil contamination in 1990, the California Department of Toxic Substances Control has directed soil and groundwater remediation. To date, plaintiff has spent $400,000; the final costs are expected to total several million dollars.

Each defendant issued one or more comprehensive general liability policies to plaintiff and its affiliates while the sites were in operation. Each defendant is licensed or otherwise authorized to do business in California; each sells policies applying to persons, property and risks located here. Nearly all of the defendants sell more insurance in California than in any other state.

Through its Michigan headquarters, plaintiff purchased policies to cover its operations throughout the United States. It used a variety of brokers for this purpose, some in Michigan and some in other states, but seldom acted through a California broker. Some policies issued by defendant Insurance Company of North America (INA) to Philco Ford Corporation, the predecessor in interest to Ford Aerospace Corporation, contain endorsements specifying that the policies "represent[] business in [California] transacted through the below named resident agent licensed by the [California] Insurance Department." The policies of defendants INA, Certain Underwriters at Lloyd's London and London Market Insurance Companies (Lloyd's), Lexington Insurance Company (Lexington), Northbrook Insurance Company (Northbrook) and Stonewall Insurance Company (Stonewall) contain provisions stating the insurer "will submit to the jurisdiction of any court of

competent jurisdiction and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court."

On February 5, 1993, defendants Home Insurance Company (Home) and INA, as well as Aetna Casualty and Surety Company, an insurer named in the Kentucky action, filed suit in Michigan against plaintiff and 14 other insurers of plaintiff. (Home Insurance Co. v. Ford Motor Co. (Super. Ct. Oakland County, Mich., 1993, No. 93-448999-CK).) The plaintiff insurers seek a declaration that they have no coverage exposure with respect to more than 150 sites located in 24 different states. Among the listed sites are the three California sites at issue in this action and the eleven sites at issue in the Kentucky and New Jersey actions. Plaintiff is neither a Michigan nor a California corporation; however, its principal place of business is in Dearborn, Michigan. Defendants are neither California nor Michigan corporations and have their principal places of business neither in this state nor in Michigan.

In February 1993, insurers in the Kentucky action, including defendants Home, INA, Lloyd's and Northbrook (through its successor in interest, Allstate Insurance Company), moved to stay or dismiss that action on the ground of forum non conveniens. The motions were based primarily on the claim that the Michigan action should have preference due to its more comprehensive scope. On March 15, 1993, the Kentucky court denied the motion, noting the burden was on the insurers to demonstrate that Kentucky was an unfair, inappropriate or inconvenient forum, and they had failed to carry their burden. Four defendants also moved to dismiss or stay the two New Jersey actions on the same ground. On April 2 and June 18, 1993, the Camden County and Middlesex County courts, respectively, denied those motions, finding defendants had failed to carry their burden of proof.

On April 5, 1993, plaintiff moved to dismiss the Michigan action on the ground of forum non conveniens. In June 1993, the Michigan court denied the motion, finding plaintiff had failed to establish that Michigan was an inconvenient forum. The court noted, however, that it would assume jurisdiction over sites located in other states with pending actions only if those courts relinquished their jurisdiction.

CONTENTION

Plaintiff contends the trial court abused its discretion in granting defendants' motions to dismiss the action on grounds of forum non conveniens. For the reasons set forth below, we agree.

DISCUSSION

■ It is well established that "[f]orum non conveniens is an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere. [Citations.] . . . [¶] In determining whether to grant a motion based on forum non conveniens, a court must first determine whether the alternate forum is a 'suitable' place for trial. If it is, the next step is to consider the private interests of the litigants and the interests of the public in retaining the action for trial in California. The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses. The public interest factors include avoidance of overburdening local courts with congested calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation. [Citations.]" (*Stangvik* v. *Shiley Inc.* (1991) 54 Cal.3d 744, 751 [1 Cal.Rptr.2d 556, 819 P.2d 14]; *Northrop Corp.* v. *American Motorists Ins. Co.* (1990) 220 Cal.App.3d 1553, 1560, fn. 3 [270 Cal.Rptr. 233]; accord, *Gulf Oil Corp.* v. *Gilbert* (1947) 330 U.S. 501, 508-509 [91 L.Ed. 1055, 1062-1063, 67 S.Ct. 839].)

■ The granting or denial of a forum non conveniens motion lies within the court's sound discretion. (*Stangvik* v. *Shiley Inc.*, *supra*, 54 Cal.3d at pp. 751-752.) A court has exercised its discretion appropriately when "the act of the lower tribunal is within the range of options available under governing legal criteria in light of the evidence before the tribunal." (*Cal-State Business Products & Services, Inc.* v. *Ricoh* (1993) 12 Cal.App.4th 1666, 1680 [16 Cal.Rptr.2d 417].) In exercising its discretion, however, the court must bear in mind that the moving party bears the burden of proving that California is an inconvenient forum. (*Stangvik*, *supra*, at p. 751.) There thus must be *evidence*—not merely bald assertions—to support the trial court's determination. (*Bechtel Corp.* v. *Industrial Indem. Co.* (1978) 86 Cal.App.3d 45, 48 [150 Cal.Rptr. 29].)

Notwithstanding defendants' argument to the contrary, it remains the case in this state that the plaintiff's choice of forum is entitled to great weight even though the plaintiff is a nonresident. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be

disturbed." (*Gulf Oil Corp.* v. *Gilbert, supra,* 330 U.S. at p. 508 [91 L.Ed. at p. 1062] [plaintiff, a Virginia resident, filed suit in New York]; accord, *Piper Aircraft Co.* v. *Reyno* (1981) 454 U.S. 235, 255 [70 L.Ed.2d 419, 435-436, 102 S.Ct. 252]; *Stangvik* v. *Shiley Inc., supra,* 54 Cal.3d at p. 753; *Price* v. *Atchison, T. & S. F. Ry. Co.* (1954) 42 Cal.2d 577, 585 [268 P.2d 457] [plaintiff, a New Mexico resident, filed suit in California].) While the California Supreme Court in *Stangvik* did note in dicta that there appears to be some illogic in affording great deference to a nonresident plaintiff's choice of forum, it also declined to state a different rule, noting that this would be inconsistent with *Piper Aircraft Co.* and other United States Supreme Court cases. (*Stangvik, suprà,* 54 Cal.3d at p. 755, fn. 7.) The only pertinent *holding* in *Stangvik* is that a foreign, noncitizen plaintiff's choice of forum is entitled to less deference. (*Id.* at p. 753.)

The analysis of the trial court's granting of the forum non conveniens motion in this case thus must start from the premise that defendants bore the burden of producing sufficient evidence to overcome the strong presumption of appropriateness attending plaintiff's choice of forum. That is, the inquiry is not whether Michigan provides a *better* forum than does California, but whether California is a *seriously inconvenient* forum. (*Northrop. Corp.* v. *American Motorists Ins. Co., supra,* 220 Cal.App.3d at p. 1561.) Unless defendants met their burden, the trial court necessarily abused its discretion.

Many of the insurance policies involved in this case, issued by defendants INA, Lloyd's, Lexington, Northbrook and Stonewall, contain a "service of suit" clause. In each instance, the clause is closely similar to the clause in the insurance policy at issue in *Appalachian Ins. Company* v. *Superior Court* (1984) 162 Cal.App.3d 427 [208 Cal.Rptr. 627]. When a policy contains such a clause, the parties' convenience also weighs "in favor of suit in the forum chosen by the plaintiff," although "transfer could be warranted by the remaining factors." (*Id.* at pp. 437-438.)

Over the years, the courts have identified a number of specific factors to be considered in assessing the private and public interests in a forum non conveniens case. (See, e.g., *Great Northern Ry. Co.* v. *Superior Court* (1970) 12 Cal.App.3d 105, 113-115 [90 Cal.Rptr. 461].) As noted in *Northrop Corp.* v. *American Motorists Ins. Co., supra,* 220 Cal.App.3d at page 1560 and footnote 3, these factors fit roughly into three broad categories: the relationship of the case and the parties to each forum, concerns of judicial administration, and convenience to the parties and witnesses. We consider these in turn.

*Relationship of Case and Parties to Forum*

Among the factors to be considered are the defendant's amenability to process and principal place of business, this state's interest in providing a forum for some or all parties, the relationship of the parties to this state requiring participation here, the relationship of the underlying facts to this state, this state's interest in regulating the conduct involved, the public interest in the case, and, considering these factors, the burden of prosecuting the action here. (*Northrop Corp.* v. *American Motorists Ins. Co.*, *supra*, 220 Cal.App.3d at p. 1560, fn. 3.) ▇▇ Defendants are amenable to process in both California and the alternative forum, Michigan. None of the defendants have their principal places of business in California *or* in Michigan. California's interest in providing plaintiff, who is a California taxpayer, employer and property owner, with a forum is no weaker than Michigan's interest in providing defendants, who do business in that state, with one. These factors therefore are neutral.

The parties disagree sharply as to the relationship of the underlying facts to this forum. As defendants see it, the underlying facts involve nothing more than the negotiation, formation, performance and their alleged breach of insurance contracts. Inasmuch as these acts took place outside California, defendants argue, California's relationship to the underlying facts is minimal or nonexistent. This view of the matter is excessively narrow.

Whether defendants' denial of coverage breached the insurance policies at issue cannot be answered without consideration of plaintiff's knowledge and actions in California. Among defendants' affirmative defenses in this action are that the pollution of the three California sites was not "sudden and accidental," that the pollution was "expected or intended" and that plaintiff failed to disclose "known risks" when the policies were issued. Plaintiff's knowledge of the pollution of the sites and whether it was "expected or intended" depends largely, if not entirely, on the knowledge of its on-site California employees. (*Shell Oil Co.* v. *Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 748 [15 Cal.Rptr.2d 815].) Similarly, whether the pollution occurred suddenly and accidentally depends entirely on events that happened in California. (See *id.* at pp. 773-774.) This state therefore has a significant relationship to the underlying facts. Moreover, some of defendant INA's insurance policies, at least, have endorsements brokered in California that pertain expressly to risks located in California. The trial court could have weighed this factor against the convenience of California as a forum only by ignoring these facts.

Two of the more important factors to be considered are California's interest in regulating the conduct involved and the public's interest in the

case. Defendants argue that California's interest has been reduced simply to the question of who will pay to clean up the pollution of the three California sites and, therefore, its interest is significantly diminished. In determining that California was not an inconvenient forum where the plaintiff had its principal place of business here and the suit involved "the construction, application, and alleged breach of [insurance] contracts obtained, undertaken and delivered" here, the court in *Northrop Corp.* v. *American Motorists Ins. Co., supra,* 220 Cal.App.3d at page 1563 did conclude that California had the greatest interest in regulating the issues in the suit, which the court saw as involving merely who would pay. In context, however, the true meaning of this passage is that the court found the application of the policy to facts pertaining to sites located elsewhere was insufficiently weighty to overcome the deference due to the plaintiff's choice of forum and other factors favoring California as a convenient forum.

As noted in *Leski, Inc.* v. *Federal Ins. Co.* (D.N.J. 1990) 736 F.Supp. 1331, the resolution of which state has the more substantial interest in regulating the conduct at issue "turns on how [the interest] is characterized; it can be viewed either as a dispute between private parties over the interpretation of a private contract, or as a dispute over insurance coverage in relation to environmental enforcement actions." (At p. 1333.) After noting the statutes evincing New Jersey's "overriding interest in seeing to the cleanup of toxic wastes located within its boundaries" and cases holding " 'the allocation of clean-up costs is fundamental to any state's environmental policy,' " the *Leski* court reasoned: "A corollary to New Jersey's compelling interest in the remediation of hazardous waste sites is its interest in the availability of insurance coverage for the costs associated with the cleanup of those sites. . . . [¶] [I]t is difficult to imagine any interest that New Jersey could have that would be more compelling, or . . . more 'dominant and significant,' than its interest in determining the availability of funds for the cleanup of hazardous substances located within its boundaries." (*Id.* at p. 1335.) This view is widely held. (See, e.g., *Continental Ins.* v. *Northeastern Pharmaceutical* (8th Cir. 1988) 842 F.2d 977, 985, cert. den. *sub nom. Missouri* v. *Continental Insurance Cos.* (1988) 488 U.S. 821 [102 L.Ed.2d 43, 109 S.Ct. 66] ["the broad issue of the availability of liability insurance coverage under standard-form CGL policies for the costs of cleaning up hazardous waste sites is a question of substantial importance . . . to the public"]; *Mapco Alaska Petroleum* v. *Central Nat. Ins. Co.* (D.Alaska 1991) 795 F.Supp. 941, 944; *Intel Corp.* v. *Hartford Acc. and Indem. Co.* (N.D.Cal. 1988) 692 F.Supp. 1171, 1193, affd. in part and revd. in part on other grounds (9th Cir. 1991) 952 F.2d 1551; *Johnson Matthey* v. *Pa. Mfrs.' Ass'n* (1991) 250 N.J.Super. 51 [593 A.2d 367, 370], disapproved on other grounds in *Gilbert Spruance* v. *Pennsylvania Mfrs.* (1993) 134 N.J. 96 [629 A.2d 885, 894].)

California, too, has a fundamental interest in the preservation of the quality of its natural environment and in the remediation of toxic contamination within its borders. (See, e.g., Pub. Resources Code, § 21000, subd. (a); Health & Saf. Code, § 25392.1, subd. (a), repealed by Stats. 1993, ch. 54, § 7.) Indeed, it undoubtedly was the importance of this state's interest in the general availability of insurance coverage for environmental pollution cleanup and the importance of this point to the resident California plaintiff that encouraged the court in *Northrop Corp.* v. *American Motorists Ins. Co.*, *supra*, 220 Cal.App.3d 1553 to favor California as a forum. In short, the weight of persuasive authority favors assigning to California a substantial interest in regulating the conduct at issue in this case.

Moreover, that California law applies to the adjudication of coverage for the contaminated sites is further evidence of California's interest in this litigation. In determining a choice of laws, California relies on the Restatement Second, Conflict of Laws. Section 193 thereof governs insurance contracts of the type at issue in this case. (*California Casualty Indemnity Exchange* v. *Pettis* (1987) 193 Cal.App.3d 1597, 1607 [239 Cal.Rptr. 205]; *Mapco Alaska Petroleum* v. *Central Nat. Ins. Co.*, *supra*, 795 F.Supp. at p. 944; Rest.2d, Conflict of Laws, § 193, com. a.) Under section 193, "[t]he location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law." (*Id.*, com. b.) Inasmuch as the insured risks at issue in this case are located in California, therefore, the law of this state applies to the interpretation and application of defendants' insurance policies.[1]

*Concerns of Judicial Administration*

■ The factors to be considered in this category are differences in conflict of laws rules, the enforceability of a judgment in California, the avoidance of a multiplicity of actions and inconsistent adjudications, the relative probability of inconveniences from court and calendar congestion, whether jury duty will be imposed on a community unrelated to the case, the burden on local courts and taxpayers and the availability of an alternative forum. ■ Presumably, any judgment will be enforceable in both California and Michigan. We have no evidence that there are significant differences in the Michigan and California precepts governing conflict of laws.

---

[1]The cases defendants cite for the application, instead, of Michigan law are inapposite. None of them look to section 193 of the Restatement; all rely instead on section 188, which applies to contracts in general. (See, e.g., *W.R. Grace & Co.* v. *Continental Cas. Co.* (5th Cir. 1990) 896 F.2d 865, 873-875; *Olin Corp.* v. *Insurance Co. of North America* (S.D.N.Y. 1990) 743 F.Supp. 1044, 1049, affd. (2d Cir. 1991) 929 F.2d 62; *Golotrade Shipping & Chartering* v. *Travelers Indem.* (S.D.N.Y. 1989) 706 F.Supp. 214, 218.)

Additionally, while California courts routinely suffer from problems with calendaring and congestion, there is no evidence that Michigan courts have any less of a problem in this regard, and the instant action is less likely to clog the courts than is the massive Michigan action. (See, e.g., *Union Carbide Corp.* v. *Aetna Cas. and Sur. Co.* (1989) 212 Conn. 311 [562 A.2d 15, 17].) Accordingly, these factors are neutral.

When the instant matter was filed, it was assigned to the fast track program. That is evidence of California's ability to decide the case expeditiously. (*Northrop Corp.* v. *American Motorists Ins. Co., supra,* 220 Cal.App.3d at p. 1564.) In contrast, the resolution of the coverage dispute over the three California sites at issue in this case is linked with nearly 150 other site claims in the Michigan case. The sheer size of the case defeats any expectation that it will be resolved quickly. (*Union Carbide Corp.* v. *Aetna Cas. and Sur. Co., supra,* 562 A.2d at p. 17.) This factor therefore favors California.

Defendants attempt to neutralize this consideration by arguing that the courts currently favor comprehensive actions such as their Michigan suit. The cases defendants cite for this proposition, however, all involve a court's refusal to dismiss for inconvenient forum. (See, e.g., *Northrop Corp.* v. *American Motorists Ins. Co., supra,* 220 Cal.App.3d at pp. 1564-1565; *E.I. du Pont de Nemours* v. *Admiral Ins.* (Del.Super. 1989) 577 A.2d 305, 309; *Monsanto Co.* v. *Aetna Cas. and Sur. Co.* (Del.Super. 1988) 559 A.2d 1301, 1312; cf. *Lumbermens Mut. Cas.* v. *Continental Bank & Trust.* (2d Cir. 1986) 806 F.2d 411, 412.) There is no authority for the proposition that *only* a comprehensive action is appropriate and, therefore, the forum in which a more limited action is filed necessarily is inconvenient. (*Union Carbide Corp.* v. *Aetna Cas. and Sur. Co., supra,* 562 A.2d at p. 17.)

Considerations of judicial economy other than expeditious resolution of the action do favor Michigan. Clearly, if the instant claims are litigated in tandem with the myriad other claims at issue there, it will not be necessary to expend as many judicial resources as it would were the instant claims tried in a separate action. Similarly, defendants' preferred forum, Michigan, is available. This factor also favors Michigan.

In considering the burden placed on local courts and taxpayers, the question is "[w]hether prosecution of the action will or may place a burden on the courts of this state which is unfair, inequitable or disproportionate in view of the relationship of the parties or of the cause of action to this state." (*Great Northern Ry. Co.* v. *Superior Court, supra,* 12 Cal.App.3d at pp.

113-114.) As noted *ante*, California has a substantial interest in regulating the conduct at issue in this case. The burden imposed on California courts thus will not be disproportionate to the state's relationship to the cause of action, and jury duty will not be imposed on a community unrelated to the case.

Defendants place great emphasis on avoiding a multiplicity of actions and inconsistent adjudications. They argue that trying the claims raised in the instant matter in the Michigan action is the only way to avoid these pitfalls. They misconceive the nature of this concern. The question is not whether there may be a multiplicity of actions and inconsistent adjudications concerning *other* claims, but whether these factors may come into play with respect to the claims asserted in this action. (See, e.g., *Great Northern Ry. Co.* v. *Superior Court, supra,* 12 Cal.App.3d at p. 114.) There is no evidence that there are third parties against whom plaintiff might assert claims who could not be joined in this action, but only could be reached by a separate action outside this forum. There is no risk that the Michigan court will determine the issues raised in this case if California retains jurisdiction. That court has indicated its desire to defer to other states' exercise of their jurisdiction. It will exercise jurisdiction over cases involving sites outside Michigan only if the courts of those states relinquish jurisdiction. This factor therefore does not weigh against California.[2]

### Convenience to Parties and Witnesses

 The factors to be considered in this category are the relative convenience of the alternative forum, the disadvantages to the parties of each forum, the inconvenience to witnesses in either forum, the relative expense of pursuing the case in each forum, whether a view of the premises will be necessary or helpful to the trier of fact, the relative ease of access to sources of proof, the availability of compulsory process for witnesses, the relative advantages and obstacles to a fair trial, the inconvenience of presenting testimony by deposition, and other practical considerations making trial inexpensive and expeditious. (*Northrop Corp.* v. *American Motorists Ins. Co., supra,* 220 Cal.App.3d at p. 1560, fn. 3.) It appears unlikely that a view of the premises will be helpful in this case. (*Id.* at p. 1565, fn. 7; *Monsanto Co.* v. *Aetna Cas. and Sur. Co., supra,* 559 A.2d at pp. 1306-1307.)

---

[2]In any event, a multiplicity of actions and the risk of inconsistent adjudications could not be avoided even under defendants' interpretation of this factor. In addition to the Michigan action, the Kentucky action and two New Jersey actions remain pending. Whether or not California retains jurisdiction over the instant matter, there thus will be multiple actions interpreting and applying the same insurance policies to claims in different states and, therefore, a risk of inconsistent adjudications.

Additionally, there is nothing to suggest that either state offers particular advantages or obstacles to a fair trial. These factors therefore may be discounted.

Defendants argue that a substantial number of Michigan-based witnesses likely will "testify concerning the negotiations, brokering, and performance of the policies which are the subject matter of this action." The issues in this matter are so poorly developed at this point, however, that there is no factual basis from which it can be determined that the negotiation and brokering of these insurance policies will be at issue. With the exception of the question whether defendants received timely notice of plaintiff's claims under the insurance policies, defendants have failed to demonstrate that there is any issue in this case which will involve the activities of plaintiff's personnel at the Michigan headquarters rather than those working at the California sites before their closure. While they argue that the corporate environmental quality office and insurance department will have such witnesses, they have not provided any factual basis for their assertions.

In any case, the policies in question are 20 or more years old. It is equally likely that any personnel concerned with the negotiation and brokering of the policies now live outside Michigan. Moreover, except for a few insurance brokers, any witnesses relevant to this issue who may be located in Michigan will be plaintiff's employees. Plaintiff therefore can secure their attendance. There certainly are a great many documents housed in Michigan which are relevant to the issues raised in this case. Documents, however, may be transported easily from one jurisdiction to another. It is the convenience of defendants which is at issue. Plaintiff selected this forum and, therefore, presumably is willing to bear any added inconvenience and expense in producing witnesses and documents here. (See, e.g., *Northrop Corp.* v. *American Motorists Ins. Co.*, *supra*, 220 Cal.App.3d at p. 1565.)

In contrast to defendants, plaintiff argues that considerations of convenience favor trying the action in California. As plaintiff notes, the three contaminated sites at the heart of the action are located in California, and none of plaintiff's claims implicate its Michigan manufacturing activities. The stimulus for plaintiff to seek a declaration of rights in this case comes from ongoing investigations and remedial actions directed by California state and local regulatory agencies. Plaintiff has produced evidence that it has employed California-based environmental consultants to assist it in these activities. Plaintiff is correct in stating that adjudicating coverage in this case necessarily will require inquiry into historical and technical facts concerning plaintiff's actual operations at the site. Plaintiff has not operated the sites in

question for some years and, in many cases, no longer employs those who worked at and were in charge of these operations. In plaintiff's view, this means that many of those familiar with operations at each site probably continue to reside in California. They thus are amenable to process in this state, but their appearance could not be compelled in Michigan.

The problem with plaintiff's argument is that, like defendants, plaintiff has presented no evidence that such witnesses reside in California or that they will be necessary to a fair trial of this action. Although an insurance coverage suit of this nature may turn on site-specific evidence produced by local witnesses (*Riehl* v. *Travelers Ins. Co.* (3d Cir. 1985) 772 F.2d 19, 24-25; *Sandvik, Inc.* v. *Continental Ins. Co.* (D.N.J. 1989) 724 F.Supp. 303, 308; *Avnet, Inc.* v. *Aetna Cas. and Sur. Co.* (1990) 160 A.D.2d 463 [554 N.Y.S.2d 134, 135]; *Union Carbide Corp.* v. *Aetna Cas. and Sur. Co.*, *supra*, 562 A.2d at p. 17; see also *Montrose Chemical Corp.* v. *Superior Court* (1994) 25 Cal.App.4th 902, 908 [31 Cal.Rptr.2d 38]), such litigation does not necessarily "require a predominant cast of [local] witnesses" (*Northrop Corp.* v. *American Motorists Ins. Co.*, *supra*, 220 Cal.App.3d at p. 1565). Documents may resolve the issues without the need for testimony, or the site-specific issues may play only a limited role in the case.

At this point, it is impossible to tell whether the majority of witnesses in this case will be located in California, in Michigan or in other localities, or the ease with which these witnesses can be produced in an alternative forum. Inasmuch as the factors pertaining to the convenience of the parties and witnesses cannot be weighed appropriately at this juncture, the trial court necessarily abused its discretion in considering these factors.

To summarize, we start with the presumption that plaintiff's chosen forum is convenient. The parties' convenience in this forum also is reflected in the many "service of suit" clauses found in the insurance policies. Given California's relationship to the underlying facts, the state's substantial interest in regulating the conduct at issue and the public's substantial interest in this case, the relationship of the case to the forum also favors California. Moreover, in light of California's superior ability to decide the case expeditiously, the absence of any disproportionate burden on this state's courts, the absence of any unfairness in imposing jury duty on a community unrelated to the action and the lack of any possibility of needlessly multiplicitous actions and inconsistent adjudications, considerations of judicial administration also favor California. Finally, party and witness convenience cannot be determined at this juncture. Given the wealth of factors favoring California as a forum, the trial court clearly abused its discretion in granting defendants' motions and dismissing the instant action.

The judgment is reversed. The trial court is directed to vacate its order granting defendants' motions to dismiss for forum non conveniens and to enter a new and different order denying said motions. Plaintiff shall recover its costs on appeal.

Ortega, J., and Masterson, J., concurred.

Respondents' petition for review by the Supreme Court was denied August 17, 1995.