Filed 6/24/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| JANE DOE WHBE 3, et al.,<br><br>      Plaintiffs and Appellants,<br>v.<br>UBER TECHNOLOGIES, INC., et al.,<br><br>      Defendants and Respondents. | A167458, A167709<br><br>(San Francisco City & County<br>Super. Ct. No. CJC21005188) |

In 2020, plaintiff Jane Doe (later to become identified as Jane Doe WHBE 3) filed suit against Uber Technologies, Inc. and Raiser, LLC, its wholly owned subsidiary (together, Uber) in San Francisco Superior Court for claims arising out of an incident in Hawaii in which Doe alleged she was sexually assaulted by her Uber driver. In 2021, Jane Doe LSA 35 filed a similar suit alleging that she was sexually assaulted by her Uber driver in Texas. Their cases, along with hundreds of others, were eventually coordinated before one coordination trial judge of the San Francisco Superior Court.

Uber moved to stay the cases on the ground of forum non conveniens, and in a comprehensive 21-page order the trial court granted the motions. The trial court subsequently entered the parties' agreed-upon order applying the ruling to a vast number of "non-California cases," where the alleged incident took place outside California, the alleged assailant resides outside California, and the plaintiffs either were not California residents or became

1

California residents only after the alleged incident.  The agreed-upon order stayed the non-California cases and provided for tolling of the statute of limitations.

Plaintiffs appeal both the trial court's forum non conveniens order and the agreed-upon order applying it to the non-California cases, asserting that the trial court erred in:  failing to "ensure that a suitable alternative forum existed for all the affected cases"; failing to require Uber to demonstrate that California was a "seriously inconvenient" forum; failing to begin from the presumption that California was a convenient forum; and failing to "accord the coordination order proper deference."  Plaintiffs also assert that Uber's terms of use require it to honor plaintiffs' choice of forum.  We conclude that none of the claims has merit, and we affirm.

## BACKGROUND

### Jane Doe WHBE 3, Jane Doe LSA 35, and the Petition for Coordination

On June 8, 2020, Jane Doe WHBE 3[1] filed suit against Uber in San Francisco Superior Court for negligence, fraud, assault, sexual battery, false imprisonment, and other claims.  She alleged she was a resident of Fresno County, "grew up in California and is a lifelong California resident," and had been sexually assaulted by her Uber driver in Hawaii on January 13, 2020.

---

[1] As plaintiffs' opening brief explains:  "Because so many Jane Doe plaintiffs filed actions against Uber, they assumed additional pseudonyms utilizing the initials of the law firms representing them."  Jane Doe WHBE 3 was "the third [case] in which the plaintiff was represented by Williams, Hart, Boundas and Easterby, LLP (now Williams, Hart & Boundas, LLP) (SF Super Ct. No. CGC-20-584649)."

2

On June 16, 2021, Jane Doe LSA 35[2] filed a similar complaint in San Francisco Superior Court. She alleged that she was sexually assaulted by an Uber driver in November 2017.

On June 28, 2021, Jane Doe LSA 1, the plaintiff in another case in San Francisco Superior Court, submitted to the Chair of the Judicial Council a petition for coordination, designation as complex, and application for a stay, pursuant to Code of Civil Procedure sections 404 and 404.1.[3] The petition alleged that there were 86 similar cases by rape and sexual assault victims pending against Uber in at least five counties, including San Francisco, Kern, Santa Clara, Los Angeles, and Sacramento. The petition requested that the cases be designated as complex, that they be coordinated before one judge of the San Francisco Superior Court, and that they be stayed pending the outcome of the petition.

On August 12, the Presiding Judge of the San Francisco Superior Court assigned the Honorable Andrew Y.S. Cheng as the coordination motion judge and set a hearing on the motion for coordination. Uber filed opposition,

---

[2] Jane Doe LSA 35's case was the 35th case where the plaintiff was represented by Levin Simes Abrams LLP (now Levin Simes LLP) (SF Super. Ct. No. CGC-21-592274).

[3] "Coordination of civil actions sharing a common question of fact or law is appropriate if one judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice taking into account whether the common question of fact or law is predominating and significant to the litigation; the convenience of parties, witnesses, and counsel; the relative development of the actions and the work product of counsel; the efficient utilization of judicial facilities and manpower; the calendar of the courts; the disadvantages of duplicative and inconsistent rulings, orders, or judgments; and, the likelihood of settlement of the actions without further litigation should coordination be denied."

petitioners a reply, and the motion came on for hearing on November 3, at the conclusion of which Judge Cheng took the matter under submission.[4]

On December 9, Judge Cheng issued a five-page order granting the petition for coordination and request for a stay, and recommending San Francisco Superior Court as the site for the coordinated proceedings. Doing so, Judge Cheng said among other things that "The Court rejects Uber's arguments that *forum non conveniens*, choice of law, and liability determinations are unavoidably individualized. Rather, liability questions center on [Uber], not its drivers. Further, while *forum non conveniens*, choice of law, and interpretation of Uber's Terms of Use may have individualized components, they address identical threshold and central legal questions that should be decided by one judge."

**Uber's Forum Non Conveniens Motions**

On February 2, 2022, the presiding judge of the San Francisco Superior Court assigned the Honorable Ethan Schulman to sit as coordination trial judge and set a case management conference for March 4. In advance of that conference, the parties submitted a joint case management statement, noting that after the coordination petition was filed, each side had filed additional notices of add-on covering an additional 430 cases. The joint statement also set forth the parties' respective positions on how to proceed with the coordinated cases: Uber proposed that Judge Schulman first decide forum non conveniens motions, plaintiffs that the parties proceed to the selection of bellwether cases for trial.

---

[4] On November 10, after the hearing, plaintiffs submitted a supplemental reply brief.

On March 4, Judge Schulman held an initial case management conference, a conference that was recorded. He expressed the view that Uber's "anticipated motions to stay or dismiss on *forum non conveniens* grounds represented a threshold matter that [he] should resolve in the first instance," going on to note that the issue will determine "how many of these cases are going to stay" in California and "how many of them will be stayed or dismissed to be refiled . . . in other [S]tates or indeed other countries." Later in the conference, plaintiffs' counsel expressed the view that the question of the appropriate forum was "something that the court can weigh and assess in the aggregate," because the court's decision on a forum non conveniens motion "would apply to all the cases." According to plaintiffs' counsel, the parties would be able to "litigate this with some level of stipulated facts," and it would not be necessary to "know each and every fact about every case" in order to "resolve the global issue of whether the cases belong [in California] or not." The conference ended with Judge Schulman directing the parties to meet and confer about: "how to group cases" into "categories," forum non conveniens related discovery, and a briefing and hearing schedule on the contemplated forum non conveniens motions.

Another case management conference took place on April 21, in advance of which the parties submitted a joint statement representing that the "parties have agreed that Uber will file motions to stay or dismiss based on forum non conveniens . . . covering a few categories of cases. Those motions will address categories of cases that Uber contends should be dismissed or stayed pending refiling in an appropriate forum, including cases in which the alleged incident took place in a state other than California, or where the Plaintiff has had a residence outside California at the time of or since the incident (the 'non-California Cases')." At the conference, Judge

5

Schulman indicated that "my tentative thinking at this point is I'll hold the hearing on the forum non conveniens motions and then set a case management conference to be held not too far later after that that would give you enough time, once the dust from that ruling settles, to figure out how it affects how you're going to handle the rest of the cases."[5]

On August 10, the parties submitted a "Stipulation re: Forum Non Conveniens Discovery and Motions Practice," setting forth procedures for forum non conveniens discovery and a briefing schedule for the motions. In the stipulation the parties acknowledged that Uber's forum non conveniens motions "will cover only a number of particular cases (consistent with the [p]arties' case management statement submissions and the colloquy with the Court at the conferences on March 4, 2022 and April 21, 2022)." The parties thus agreed to "meet and confer" after Judge Schulman's decision on those particular cases to "discuss a process [for] stipulating to or contesting the applicability of the [c]ourt's ruling . . . to the remainder of the cases within this coordinated proceeding." And the stipulation concluded with this: "Following resolution of the Forum Motions, which will cover only a number of particular cases (consistent with the Parties' case management statement submissions and the colloquy with the Court at the conferences on March 4, 2022 and April 21, 2022), the parties shall meet and confer to discuss a process stipulating to or contesting the applicability of the Court's ruling on the Forum Motions to the remainder of the cases within this coordinated proceeding."

---

[5] We granted Uber's unopposed motion to augment the record with the transcripts of the March 4, 2022 and April 21, 2022 case management conferences.

6

On October 10, Uber filed motions to stay or dismiss two cases—those of Jane Doe LSA 35 and Jane Doe WHBE 3—on the grounds of forum non conveniens. The motions asserted that as of their filing the coordinated proceeding involved some 1,201 plaintiffs, and that "the vast majority—roughly two-thirds of cases with known alleged incident locations—involve incidents that occurred outside California, across at least 50 other jurisdictions in and outside the U.S." The introduction to the motions identified two categories of cases: Category 1, in which "[t]he alleged incident occurred outside California and both the plaintiff and the alleged assailant reside outside California," and Category 2, in which "[t]he alleged incident occurred outside California, the alleged assailant resides outside California, and the plaintiff resided outside California at the time of the alleged incident and subsequently moved to California." The motions asserted that Jane Doe LSA 35 fell into Category 1, and Jane Doe WHBE 3 into Category 2.

On November 14 and 15, plaintiffs filed oppositions to Uber's motions, oppositions, we note, that made no reference to any claimed "deference" that should be given to the coordination order, no reference to any claim of collateral estoppel. Apropos the issues on appeal, as to the Hawaii case, the individual plaintiff agreed that Hawaii was a suitable alternative forum based on Uber's willingness to stipulate to tolling. And in the Texas case, the plaintiff did not dispute that Texas was a suitable alternative forum. The plaintiff in the Texas case also argued that any ruling in that case should not be "extrapolated" to the remaining cases.

Uber filed replies, and the motions came on for hearing on January 4, 2023. Among other things, counsel for plaintiffs explained that they were not intending to "repudiat[e]" the parties' longstanding case-management plan, that they only intended to preserve the right "[to] meet and confer with

7

[defendants] to figure out which of the cases the ruling touches" and to object to application of the ruling on a case-specific basis. And, counsel went on to recognize, if "the motion is granted, . . . there will be a large number of cases that will need to be refiled in state courts and federal courts."

**Judge Schulman's Decision**

On January 23, 2023, Judge Schulman issued a 21-page order granting Uber's motions for a stay as to both Jane Doe LSA 35 and Jane Doe WHBE 3.[6] The order was thorough, and thoughtful, and proceeded in accordance with the guidelines set out in the seminal case of *Stangvik v. Shiley, Inc.* (1991) 54 Cal.3d 744, 751 (*Stangvik*). And we discuss it at some length.

Judge Schulman began by considering whether there was a suitable alternate forum for each of the cases, with this observation: " 'An alternative forum is suitable if it has jurisdiction and the action in that forum will not be barred by the statute of limitations.' (*Guimei v. Gen. Electric Co.* (2009) 172 Cal.App.4th 689, 696.) ' "[I]t is sufficient that the action can be brought, although not necessarily won, in the alternative forum." ' (*Id.* at 696.) 'It is well settled under California law that the moving parties satisfy their burden on the threshold suitability issue by stipulating to submit to the jurisdiction of the alternative forum and to waive any applicable statute of limitations.' (*Hahn v. Diaz-Barba* (2011) 194 Cal.App.4th 1177, 1190 [(*Hahn*)].) Uber has offered to enter into just such a stipulation. Plaintiffs do not dispute that there is a suitable forum for each of the cases affected by Uber's motions.

---

[6] The order noted "[i]n appendices to its papers, Uber lists the cases that discovery to date shows fall within each of the categories. There appear to be 925 cases listed under Category 1 and 37 under Category 2. Thus, Uber's motions potentially bear on the proper forum for more than two-thirds of the over 1,400 coordinated cases."

8

(See WHBE Opposition, 7 ['Ms. Doe doesn't deny that Hawaii is a suitable forum'].)"

Judge Schulman then considered the parties' residences, the first of the *Stangvik* private interest factors, saying this:

"Both Plaintiffs assert that a plaintiff's choice of forum is entitled to great deference. As noted above, however, the presumption of convenience that attaches to a plaintiff's choice of forum applies only to California residents. (*Stangvik*, 54 Cal.3d at [pp.] 754–755; *National Football League* [*v. Fireman's Fund Insurance Company* (2013)] 216 Cal.App.4th [902,] 929 [(*NFL*)].) Thus, that Doe LSA 35, a Texas resident, chose to file suit in California 'is not a substantial factor in favor of retaining jurisdiction here.' (*Stangvik*, 54 Cal.3d at [p.] 755.)

"Doe LHBE 3 stresses that in 2006, the Court of Appeal quoted *Ford Motor Co. v. Insurance Co. of North America* (1995) 35 Cal.App.4th 604 [(*Ford*)] for the propositions that '[a] plaintiff's choice of forum is entitled to great weight even though the plaintiff is a nonresident' and that a plaintiff's choice of forum can be disturbed only 'if the balance is strongly in favor of the defendant.' (*Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1464 [(*Morris*)]; LHBE Opposition, 1, 7.) However, those propositions are no longer correct statements of California law, if they ever were. [Footnote omitted.] As one court explained:

" '[A] resident of one of our sister states who files suit in California is entitled to due deference under the circumstances presented, not a strong presumption, in favor of its choice of forum. That deference is to be weighed and balanced by the trial court along with all the other pertinent factors, including the defendant's residence or principal place of business, and has no direct bearing on the moving defendant's burden of proof. We therefore

9

disagree with the contrary language in cases such as *Ford*, which assert that all U.S. citizen plaintiffs' choices of forum are entitled to great weight.' ([*NFL*], 216 Cal.App.3d at [pp.] 929–930; see also *Fox Factory, Inc.* [*v. Superior Court* (2017)] 11 Cal.App.5th [197,] 206 [(*Fox Factory*)] [agreeing with analysis in [*NFL*] and rejecting the suggestion that 'in every case great weight is required to overcome a nonresident plaintiff's forum choice'].)

"Although Doe LHBE 3 currently is a California resident, she resided in Hawaii at the time of the alleged incident. [Citation.] While her choice of forum is entitled to some deference in the analysis, California does not have a strong interest in assuring her a forum for the redress of grievances suffered in another state that provides her a suitable forum based on the happenstance that she later moved to California. (See *Henderson v. Superior Court* (1978) 77 Cal.App.3d 583, 598 [the general rule that a court should stay rather than dismiss a case on forum non conveniens grounds if the plaintiff is a California resident is limited to 'plaintiffs who were bona fide California residents at the time their causes of action arose'].) [Footnote omitted.]

" 'Defendant's residence is also a factor to be considered in the balance of convenience. If a corporation is the defendant, the state of its incorporation and the place where its principal place of business is located is presumptively a convenient forum.' (*Stangvik*, 54 Cal.3d at [p.] 755.) However, 'this presumption is not conclusive.' (*Id.* at [p.] 756.) 'A resident defendant may overcome the presumption of convenience by evidence that the alternate jurisdiction is a more convenient place for trial of the action.' (*Id.* (footnote omitted).) Here, while Uber is incorporated in Delaware and has its principal place of business in California, it shows that it has multiple regional offices in states around the country, as well as call centers that

10

provide specialized support for critical incidents reported by Uber App users. [Citation.] Thus, while this presumption favors Plaintiffs, it is not especially strong, and may be overcome by other evidence."

Judge Schulman then turned to the location of evidence and witnesses, the second of the *Stangvik* private interest factors, noting that in each case the driver and alleged perpetrator was a resident of another state, further noting that plaintiffs "place a great deal of emphasis on the location of Uber's corporate headquarters in California." Judge Schulman ultimately concluded that he need not resolve in whose favor this particular factor weighed, with this explanation: "How the balance between these competing arguments is to be struck turns in large part on how the cases are characterized: as individual sexual assault/misconduct cases in which Plaintiffs claim Uber is vicariously liable due to its deficient safety practices, or as corporate misconduct cases in which the individual Plaintiffs' claims are, in effect, merely illustrative of their larger claims. The former view is far more persuasive to the Court since, as one federal court has pointed out, 'to prevail in this case Doe must first prove that an assault took place.' [Citations.] The Court need not definitively resolve who has the better of this debate in order to decide these motions. (See *Stangvik*, 54 Cal.3d at [p.] 757 ['Before deciding whether the private convenience of the parties weighs in favor of plaintiffs or defendants, we consider the interests of the California public in retaining the trial of the actions in this state'].)"

Judge Schulman then considered the public interest factors under *Stangvik*: avoiding overburdening local courts with congested calendars, the competing interests of California on one hand and Texas and Hawaii on the other, and the interest in trying the case in a forum familiar with the applicable law and in avoiding unnecessary conflicts of laws. Among other

11

things, Judge Schulman found that litigating the nearly 1,000 non-California cases in California would "overburden[] congested California courts with foreign cases," going on to note that his own caseload was already "overburdened with litigation as a result of the backlog of cases stemming from the pandemic," and the non-California cases—which would require the court to apply the substantive laws of all 50 states—would "dramatically magnify[y]" that burden.  And, he held, "the public interest factors involved weigh heavily in favor of transfer, and warrant granting Uber's motions," public interest factors, he further held, that "overwhelmingly apply here in favor of granting Uber's motions as to both cases."

Based on all that, Judge Schulman concluded:  "For the foregoing reasons, Defendant's motions to stay both actions are granted.  As previously directed, the parties, consistent with their stipulation and the Court's order, shall meet and confer to devise a process to stipulate to or contest the applicability of the Court's rulings on these motions to the remainder of the cases within this coordinated proceeding, and shall be prepared to address those issues at the next case management conference on February 21, 2023.  A joint case management conference statement shall be filed at least five court days prior to the case management conference."

**The Joint Case Management Conference Statement**

On February 10, the parties filed the required joint case management statement, which statement represented that "there is alignment over which cases are affected by" the January order.  Neither party contested the applicability of the January order to the remainder of the cases.  The only dispute was over the specific terms "with regard to implementation," such as the number of days permitted for refiling in alternative forums.

12

For its part, Uber attached to the statement a stipulation and proposed order providing that for the cases in Categories 1 and 2, the stay effected by the court's order would convert to a dismissal with prejudice 30 days after re-filing in an alternate forum, and that for such cases, the time between filing in California and refiling in an alternate forum "shall not be counted for purposes of the statute of limitations," and "the statute of limitations that applies to the plaintiff's claims shall be *the longer of* (a) the statute of limitations that would apply had the action been litigated in California or (b) the statute of limitation that applies under the law of the alternative forum in which the case is re-filed." Uber's proposed order further provided that for cases not re-filed within 30 days in an alternate forum, the stay would convert to a dismissal with prejudice. Uber took the position that "the draft Stipulation and Order is ready to be entered as an order of the Court. The only issue requiring resolution is the period for re-filing: 30 days (as Uber proposed) or 6 months (as Plaintiffs proposed), or a compromise in between."

In their portion of the joint statement, plaintiffs indicated that they had "reached out to every plaintiffs' firm within the JCCP in order to identify the clients whom might be impacted by the Court's FNC [Forum Non Conveniens] Order," and had "set up conference calls with firms that appear to have cases impacted by the FNC Order in order to determine how those firms wish to proceed." Plaintiffs took the position that 30 days was not enough time to provide for refiling the affected cases, and indicated they should be given six months to do so. Plaintiffs also stated that "now that Uber has prevailed on the underlying motion, Plaintiffs are encountering push back with respect to Uber's willingness to waive the statute of limitations and to ensure the fact that there is a suitable alternative forum

13

for any case dismissed.  Accordingly, we will be requesting that the Court clarify this aspect of its FNC Order with a further order to the effect that Uber has agreed to waive the statute of limitations so that plaintiff[s] may file in an alternative forum."

**The February 21 Case Management Conference**

On February 21, the case management conference took place.  At the beginning of the conference, Judge Schulman indicated that based on the parties case management statement, there were "really three issues" that needed to be addressed, the first relating to "implementation of the forum non conveniens order."  Judge Schulman noted "one disagreement, as I understand it, relates to the duration of the stay that the Court would put into effect following a dismissal without prejudice of cases that are to be re-filed in other states and before a dismissal without prejudice converts to a dismissal with prejudice."  On that point, plaintiffs' counsel responded that "we're not so much focused on how fast we have to dismiss the cases.  We're focused on how long of a waiver we're going to get of the statute [of limitations] so that" plaintiffs would have sufficient time to refile their cases in the various alternate forums.  Judge Schulman then proposed that he and the parties review Uber's proposed order in detail to see if they could reach agreement.  With respect to the provision of the proposed order providing that 30 days after refiling in an alternate forum, the stay effected by the January order would convert to a dismissal with prejudice, plaintiffs' counsel responded, "We have no problem with that, your Honor."  After Judge Schulman expressed his view that 180 days to refile the cases "doesn't sound unreasonable to me," he proposed that the 30-day timeframe in Uber's proposed order be changed to 180 days.  Both counsel agreed.  Judge Schulman then asked, "Have we just solved this problem?" to which plaintiffs'

14

counsel responded, "I think so, your Honor." Judge Schulman then suggested "I can either mark this up or alternatively why don't you all revise the stipulation and proposed order, change the 30 to 180 in the appropriate places, sign the stip, submit it to me as a proposed order, and that's that agenda item resolved." Both counsel replied, "Yes, your Honor."

**The February 28 Order**

Six days later, on February 27, counsel for Uber emailed the court, attaching the proposed order and stating as follows: "This evening, the parties filed the attached Proposed Orders, pursuant to the Court's directions at the February 21, 2023 Case Management Conference. Plaintiffs and the Uber Defendants conferred over these Proposed Orders, and jointly agreed on the contents that would be submitted."[7] The attached order had been modified as Judge Schulman indicated at the February 21 conference, providing that the stay granted by the forum non conveniens ruling would apply to a list of cases attached as an exhibit; that "[o]n the 30th day after a plaintiff re-files in an alternative forum, the stay set forth in the preceding paragraph shall convert to an order of dismissal with prejudice"; that "[f]or any plaintiff who has re-filed in an alternative forum within 180 days of the date of entry of this Order, the time that accrued between the date of filing of the plaintiff's action in this Court and the date of re-filing in the alternative forum shall not be counted for purposes of the statute of limitations"; that

_____

[7] Uber has included this email in its respondent's appendix. Plaintiffs object to the inclusion of the email on the ground it was "neither filed nor lodged" in the trial court. But the email was sent to the court, and Judge Schulman considered it in concluding that the proposed order had been agreed to by the parties. In short, plaintiffs have put at issue whether they consented to Uber's proposed order, and therefore the email is not "unnecessary for proper consideration of the issues." (See Cal. Rules of Court, rule 8.124(b)(3)(A).)

15

"[f]or any plaintiff who has re-filed in an alternative forum within 180 days of the date of entry of this Order, the statute of limitations that applies to the plaintiff's claims shall be *the longer of* (a) the statute of limitations that would apply had the action been litigated in California or (b) the statute of limitation that applies under the law of the alternative forum in which the case is re-filed"; and that "[w]ith respect to any plaintiff who has not re-filed in an alternative forum within 180 days after the date of entry of this Order, or has not sought and obtained an extension for good cause . . . , the stay set forth in the preceding paragraphs shall convert to an order of dismissal with prejudice."

Judge Schulman issued the proposed order without change the next day. As pertinent here, it provided that his order on forum non conveniens "shall apply to all of the cases in this coordinated proceeding that arise from alleged incidents that occurred outside of California." Those cases would be "stayed pursuant and subject to the terms of the [January order]." The order also required refiling within 180 days, and for cases refiled within that time period, it sets forth the terms for tolling and extending the limitations period: *First*, the limitations period is tolled "between the date of filing of the plaintiff's action in [California court] and the date of re-filing in the alternative forum." *Second*, the applicable statute of limitations "shall be *the longer of* (a) the statute of limitations that would apply had the action been litigated in California or (b) the statute of limitations that applies under the law of the alternative forum in which the case is re-filed."

Plaintiffs filed notices of appeal from both Judge Schulman's January 23 forum non conveniens ruling and his February 28 order implementing that ruling (A167709). We granted plaintiffs' unopposed motion to consolidate the appeals.

16

## DISCUSSION

### Forum Non Conveniens and the Standard of Review

Our Supreme Court discussed forum non conveniens at length in *Stangvik*, beginning as follows: "Forum non conveniens is an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere. [Citation.] The doctrine was first applied in California in *Price v. Atchison, T. & S.F. Ry. Co.* (1954) 42 Cal.2d 577 (hereafter *Price*). We described the basis of the doctrine as follows: ' "There are manifest reasons for preferring residents in access to often overcrowded Courts, both in convenience and in the fact that broadly speaking it is they who pay for maintaining the Courts concerned." [¶] . . . [T]he injustices and the burdens on local courts and taxpayers, as well as on those leaving their work and business to serve as jurors, which can follow from an unchecked and unregulated importation of transitory causes of action for trial in this state . . . require that our courts, acting upon the equitable principles . . . , exercise their discretionary power to decline to proceed in those causes of action which they conclude, on satisfactory evidence, may be more appropriately and justly tried elsewhere.' ([*Price*,] at pp. 582–584.)

"In determining whether to grant a motion based on forum non conveniens, a court must first determine whether the alternate forum is a 'suitable' place for trial. If it is, the next step is to consider the private interests of the litigants and the interests of the public in retaining the action for trial in California. The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of

17

obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses.  The public interest factors include avoidance of overburdening local courts with congested calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation.  (*Piper Aircraft Co. v. Reyno* (1981) 454 U.S. 235, 259–261 (hereafter *Piper*); *Gulf Oil Corp. v. Gilbert* (1947) 330 U.S. 501, 507–509.)" (*Stangvik, supra,* 54 Cal. 3d at pp. 751–752.)

"On a motion for forum non conveniens, the defendant, as the moving party, bears the burden of proof.  The granting or denial of such a motion is within the trial court's discretion, and substantial deference is accorded its determination in this regard.  [Citations.]"  (*Stangvik, supra,* 54 Cal. 3d at p. 752.)

As to what is required to show an abuse of discretion, it has been described as a decision that "exceeds the bounds of reason" (*People v. Beames* (2007) 40 Cal.4th 907, 920) or one that is "arbitrary, capricious, patently absurd, or even whimsical."  (*Artus v. Gramercy Towers Condominium Association* (2022) 76 Cal.App.5th 1043, 1051.)  In the words of our Supreme Court, "[a] ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.' "  (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)

Particularly apt here—where the issue is an equitable one—is our holding in *Husain v. California Pacific Bank* (2021) 61 Cal.App.5th 717, 727, where, quoting our Division Four colleagues in *Richardson v. Franc* (2015) 233 Cal.App.4th 744, 751, we said:  " 'After the trial court has exercised its

18

equitable powers, the appellate court reviews the judgment under the abuse of discretion standard. [Citation.] "Under that standard, we resolve all evidentiary conflicts in favor of the judgment and determine whether the trial court's decision ' "falls within the permissible range of options set by the legal criteria." ' " ' "

**The Alternative Fora are Suitable**

Plaintiffs' first argument is that Judge Schulman "failed to ensure that a suitable alternative forum existed for all affected cases." The argument comes late in the game—and ignores what occurred below.

As noted above, the issue of a suitable alternative forum was teed up in a straightforward way. As Uber put it in its memorandum of points and authorities: "As to Uber, were there any doubt, Uber would stipulate to the jurisdiction of the Hawaii courts in this case. . . . [¶] Nor will the Hawaii statute of limitations bar Plaintiff from bringing her claims in Hawaii. Uber is willing to stipulate to toll the statute of limitations beginning on the date of filing of its October 18, 2021 Motion to Stay or Dismiss Based on *Forum Non Conveniens*. Accordingly, under the two-year statute of limitations that typically applies to personal injury claims like this one under Hawaii law, Plaintiff would have nearly three months before her claims become time barred. Haw. Rev. Stat. § 657-7." And with respect to Jane Doe LSA 35's claims, Uber's memorandum of points and authorities stated: "There is no dispute that the Texas courts will be able to exercise personal jurisdiction over Uber in this matter. Were there any doubt, Uber would stipulate to the jurisdiction of the Texas courts in this case. . . . Likewise, in the event this motion is granted, Uber would stipulate to toll the applicable statutes of limitations in this action from the date Plaintiff filed her complaint in *Jane Doe LSA 35 v. Uber Techs., Inc.*, CGC-21-592274 (June 16, 2021) until Plaintiff re-files her complaint in Texas and would stipulate to all similarly

19

situated cases within Category 1.  Tolling stipulations like this are routinely accepted by California courts.  See, e.g., *Hahn*, 194 Cal.App.4th at 1190.  Thus, no Texas statute of limitations will bar Plaintiff from bringing claims that were timely filed in the California court."

In response, Jane Doe WHBE 3's opposition admitted that "Ms. Doe doesn't deny that Hawaii is a suitable forum—given Uber's statement that it will toll the statute of limitations."  And Jane Doe LSA 35's opposition did not discuss whether Texas is a suitable alternative forum at all.  And as quoted above, Judge Schulman concluded:  " 'It is well settled under California law that the moving parties satisfy their burden on the threshold suitability issue by stipulating to submit to the jurisdiction of the alternative forum and to waive any applicable statute of limitations.' (*Hahn*, [*supra*,] 194 Cal.App.4th [at p.] 1190.)  Uber has offered to enter into just such a stipulation.  Plaintiffs do not dispute that there is a suitable forum for each of the cases affected by Uber's motions. (See WHBE Opposition, 7 ['Ms. Doe doesn't deny that Hawaii is a suitable forum'].)"

We have discussed in some detail all that occurred below, including the several admissions and concessions—some written, some oral—made by plaintiffs' counsel.  Now, for the first time, plaintiffs argue that "Uber never submitted an actual stipulation" to submit to jurisdiction or to toll the statute of limitations in Hawaii or Texas, and that the statements in Uber's legal memoranda that it was willing to so do "are not evidence."  Plaintiffs further argue, relying particularly on *Investors Equity Life Holding Co. v. Schmidt* (2015) 233 Cal.App.4th 1363 (*Investors Equity II*), that no such stipulation would survive the cases being dismissed, and that Judge Schulman erred in failing to make suitability determinations regarding the other 47 states—

20

other than Texas and Hawaii—where plaintiffs' claims might ultimately be re-filed. We consider the argument waived.

It is well settled " 'that a party to an action may not, for the first time on appeal, change the theory of the cause of action [citations] and that issues not raised in the trial court cannot be raised for the first time on appeal. [Citations.]' (*Estate of Westerman* (1968) 68 Cal.2d 267, 279, fn. omitted; see *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350, fn. 12.)" (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603; see generally Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2023) ¶ 8:229.) Plaintiffs' argument is also barred by the related rule that " '[w]here a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' on appeal." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 (*Norgart*).)

If plaintiffs believed that Uber's representations it was willing to stipulate to jurisdiction and to toll the statute of limitations were inadequate to establish that Hawaii and Texas were suitable alternate forums, they could have so argued below, giving Judge Schulman an opportunity to address the issue. They did not. Instead, at least with respect to Jane Doe WHBE 3, they expressly conceded that Hawaii was a suitable alternative forum based on Uber's representations. (See *Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1519 [finding it "particularly unfair and inappropriate" to complain that trial court erred when plaintiff "led the trial court down that path by . . . *conceding the very issue he now disputes*"].) In any event, the argument has no merit.

Plaintiffs argue that "Uber's promise to promise is unenforceable and cannot support a 'suitable alternative forum' finding," apparently arguing that a formal stipulation is required. The cases are contrary, illustrated by

21

*Roman v. Liberty University, Inc.* (2008) 162 Cal.App.4th 670, where the Court of Appeal accepted counsel's representation "in the trial court and on this appeal that the statute of limitations would be tolled by plaintiff's action in California . . . as equivalent, in binding effect, to a stipulation that [defendant] will not raise any statute of limitations defense in the [alternate forum]." (*Id.* at p. 683.) Other courts have found an "agreement" or "offer" to stipulate sufficient to find the alternate forum suitable. (See, e.g., *Roulier v. Cannondale* (2002) 101 Cal.App.4th 1180, 1184, 1187 [finding alternate forum suitable where defendants "offered to stipulate to jurisdiction in that forum and to waive the statute of limitations"]; *Chong v. Superior Court* (1997) 58 Cal.App.4th 1032, 1035, 1038 [reversing denial of motion for a stay and finding alternate forum suitable where defendants "agreed to stipulate" to jurisdiction and tolling of the statute of limitations]; *Shiley Inc. v. Superior Court* (1992) 4 Cal.App.4th 126, 129–130, 133 [affirming suitability finding where defendants "offered to stipulate" to submit to jurisdiction and to toll statute of limitations].) All four cases were relied on in Uber's respondent's brief. All four cases were ignored in plaintiffs' reply.

*Investors Equity II* is not to the contrary. Before *Investors Equity II* was *Investors Equity I*, *Investors Equity Life Holding Co. v. Schmidt* (2011) 195 Cal.App.4th 1519, where plaintiff, a corporation authorized to do business in California and the sole shareholder of a Hawaiian life insurance company subject to liquidation, brought suit in California against the Hawaii insurance commissioner and others. (*Id.* at p. 1523.) The trial court granted defendants a stay of the action on forum non conveniens grounds, even though "defendants had only made an informal offer to stipulate to toll the statute of limitations 'if necessary.'" (*Id.* at p. 1527.) After plaintiff appealed, all defendants executed two formal stipulations agreeing to toll the

22

statute of limitations and not to contest personal jurisdiction in Hawaii. (*Id.* at pp. 1527–1528.) Plaintiffs argued that defendants failed to carry their burden on the suitable alternative forum requirement by not directly addressing it in their original motions and belatedly filing a post appeal stipulation agreeing only to toll the statute of limitations. (*Id.* at pp. 1528–1529.) *Investors Equity I* affirmed the trial court's grant of a stay. (*Id.* at p. 1536.) After a lengthy discussion of the Hawaii statute of limitations applicable to plaintiff's claims, the court found that Hawaii was a suitable alternative forum in part based on the defendants' stipulations, and noted that because the trial court had granted a stay rather than a dismissal, "[i]n the event our understanding of Hawaii law is incorrect, plaintiff will have the opportunity to seek relief in the courts of this state." (*Id.* at p. 1534.)

After *Investors Equity I*, defendants renewed their motion to dismiss, and the court granted the motion. (*Investors Equity II*, *supra*, 233 Cal.App.4th at pp. 1367–1368.) This time, the Court of Appeal reversed, concluding as follows: "In this case, the trial court's original assessment of Hawaii's suitability, as well as our opinion affirming that assessment, was based in part on the promises and stipulations entered into by defendants *in this forum*. Having relied on those representations as a basis for our rulings, we have an interest in retaining jurisdiction to ensure plaintiff has a remedy in the event defendants do not comply with those promises in the alternate forum. Moreover, our assessment of Hawaii's suitability as an alternative forum was also based on our own analysis of Hawaii's statutes of limitations, which we concluded operated similarly to California's. However, because our analysis of Hawaii law is not binding on any proceeding conducted in Hawaii's own courts, we also explained that '[i]n the event our understanding of Hawaii law is incorrect,' the fact that this case was merely stayed, rather

23

than dismissed, meant 'plaintiff will have the opportunity to seek relief in the courts of this state.' (*Investors Equity I*, *supra*, 195 Cal.App.4th at p. 1534.)

"The trial court's subsequent decision to dismiss the action undermined both of those bases for the original suitability finding. If this case were dismissed, California would forfeit its power to act in the event the promises made by defendants in this forum are not complied with, or to offer plaintiff any relief if Hawaii ultimately interprets its own laws in a manner which materially differs from what we had anticipated. Under these circumstances, it was error to order this case dismissed before the parties' dispute is finally resolved in Hawaii." (*Investors Equity II*, *supra*, 233 Cal.App.4th at p. 1368.)

Plaintiffs argue that similarly to the dismissal in *Investors Equity II*, Judge Schulman's February 28 order "undermined" the bases for the court's suitability findings by forfeiting the court's power to act if Uber does not comply with its promises to toll the statute of limitations in Texas, Hawaii, or any of the other alternate forums. The problem with this argument is that the February 28 order was not Judge Schulman's ruling on Uber's forum non conveniens motions, but rather a *stipulated* order, consented to by the parties, implementing that ruling. Plaintiffs' argument is thus barred by two settled principles: (1) that " 'by consenting to the judgment or order the party expressly waives all objection to it, and cannot be allowed afterwards, on appeal, to question its propriety,' " (*Norgart*, *supra*, 21 Cal.4th at p. 400); and (2) that " '[w]here a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' on appeal." (*Norgart*, *supra*, 21 Cal.4th at p. 403; *Bell v. American Title Ins. Co.* (1991) 226 Cal.App.3d 1589, 1602 ["[f]ailure to register a proper and timely objection to a ruling or proceeding in the trial court waives the issue on appeal"]; see

generally Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2023) ¶¶ 8:244, 8:250, 8:268.)

To review, if plaintiffs believed that Judge Schulman's suitability finding with respect to Texas and Hawaii was erroneous because Uber had not entered into any formal stipulation they were free to raise that issue below. They did not. Indeed, the briefing on behalf on one plaintiff simply ignored the issue—and the briefing on behalf of the other expressly conceded it. Moreover, Uber attached to the joint statement a stipulation and proposed order providing that the stay effected by the court's order would convert to a dismissal with prejudice 30 days after re-filing in an alternate forum, with provisions to toll the statute of limitations, and that for cases not refiled within the 30 days, the stay would likewise be converted to a dismissal with prejudice. Uber took the position that its proposed order sufficiently addressed all the issues, concluding with this: "In short, the draft Stipulation and Order is ready to be entered as an order of the Court. The only issue requiring resolution is the period for re-filing: 30 days (as Uber proposed) or 6 months (as Plaintiffs proposed), or a compromise in between."

In their portion of the joint statement, plaintiffs took the position that they should be given six months to re-file the affected cases. They also stated that "now that Uber has prevailed on the underlying motion, Plaintiffs are encountering push back with respect to Uber's willingness to waive the statute of limitations and to ensure the fact that there is a suitable alternative forum for any case dismissed. Accordingly, we will be requesting that the Court clarify this aspect of its FNC Order with a further order to the effect that Uber has agreed to waive the statute of limitations so that plaintiff may file in an alternative forum."

25

At the case management conference, plaintiffs' counsel did not request a further order clarifying that Uber had agreed to waive the statute of limitations in any alternate forums or otherwise raise that issue.  When asked to address Uber's proposed order, plaintiffs' counsel explained that their objection was that the order did not toll the statute of limitations or provide a long enough period for re-filing before the cases would be dismissed.  Indeed, with respect to the portion of the order providing that the cases would be dismissed with prejudice 30 days *after* refiling elsewhere, plaintiffs' counsel told the court that "[w]e have no problem with that, your Honor." Then, after Judge Schulman suggested that plaintiffs' proposal of 180 days to refile and toll the statute of limitations "doesn't sound unreasonable," he then walked counsel paragraph by paragraph through the changes to the proposed order necessary to effect that change.  He then asked, "Have we just solved this problem?" to which plaintiffs' counsel replied, "I think so, your Honor." Judge Schulman then asked the parties to "revise the stipulation and proposed order, change the 30 to 180 in the appropriate places, sign the stip, submit it to me as a proposed order, and that's that agenda item resolved." Counsel for both parties replied, "Yes, your Honor."  Counsel for Uber later emailed the order, modified in the ways discussed, to the court, copying plaintiff's counsel, with the statement that "Plaintiffs and the Uber Defendants conferred over these Proposed Orders, and jointly agreed on the contents that would be submitted."

On reply, plaintiffs briefly argue that their challenge to the February 28 order has been preserved.  They first note that the order provides that "[t]his Order in no way alters any plaintiff's right to appeal the FNC Order as such right otherwise exists under California law," asserting that this language means "all rights were reserved to challenge the January order and

26

its implementation." But the order defines the "FNC Order" as "The Order granting Uber's motions to stay or dismiss *Jane Doe LSA 35 v. Uber Techs., Inc., et al.*, CGC-21-592274 and *Jane Doe WHBE 3 v. Uber Techs., Inc. et al.*, CGC 20-584649 based on *forum non conveniens*." While the provision plaintiffs cite reserved their rights to appeal Judge Schulman's ruling on the forum non conveniens motions, it says nothing about challenging its *implementation*.

Plaintiffs also note that their counsel "never signed Uber's proposed stipulation," and that rather than make a "deliberate tactical choice" to agree to the proposed order as modified at the February 21 hearing, plaintiffs' counsel "expressed his concerns 'if there had to be dismissals' as Uber was insisting." But Uber's proposed order contains precisely the same terms as its proposed stipulation, to which, as noted, plaintiffs' counsel consented.

Plaintiffs also contend that the February order is erroneous because it applied the January order to the non-California cases involving incidents outside of Texas and Hawaii, without "the court having made any finding that any other 47 sister-state jurisdictions present a suitable alternative forum." But plaintiffs agreed to a case-management plan under which decisions in cases in which forum non conveniens motions were presented would be applied to the other non-California cases, a plan under which the forum non conveniens would be resolved across all of the non-California cases by resolving the issue in specific actions from broader categories of pending cases. The agreement dated back to the case-management conference in March 2022, where plaintiffs' counsel affirmatively stated that "there is peril for everyone in trying to approach" the issue of forum non conveniens "on a case by case" basis. According to counsel, the issue was a "global" one that could be decided "in the aggregate" based on "some level of stipulated facts"

27

rather than "each and every fact about every case." In response, Judge Schulman urged the parties to confer and "think about how to group [the] cases" into "categories" for resolving the forum issue in the aggregate.

The parties did that, and the following month submitted a joint statement stating that they had "agreed that [defendants] will file motions to stay or dismiss based on forum non conveniens . . . covering a few categories of cases." And throughout the ensuing year, the parties repeatedly affirmed their agreement with that approach, including in an April 2022 case management conference and an August 2022 stipulation.

Pursuant to the agreed upon case management plan, Uber filed motions to dismiss in two cases from broader categories of non-California cases. While in opposing Uber's motions plaintiffs did argue that the court's decision on forum non conveniens should not be automatically "extrapolated" to the other non-California cases, as plaintiffs' counsel put it at oral argument, plaintiffs were not intending to "repudiate[e]" the parties' longstanding agreement to apply to the court's forum non conveniens decision to the remaining non-California cases. Instead, plaintiffs intended only to preserve the right to "meet and confer with [defendants] to figure out which of the cases the ruling touches" and object to application of the ruling on a case-specific basis. Plaintiffs' counsel also recognized that, if "the motion [to dismiss] is granted, . . . there will be a large number of cases that will need to be refiled in state courts and federal courts."[8]

In sum, plaintiffs agreed from the outset of this coordinated proceeding to litigate the issue of forum non conveniens by selecting a small number of

---

[8] Plaintiffs filed a request for judicial notice of certain pleadings in a case in Missouri. After oral argument, Uber filed its own request for another pleading in that case. Based on counsels' representations at oral argument as to a stipulation in that case, both requests are denied.

cases in which motions were made and applying the trial court's decision in those cases to other analogous cases in the coordinated proceeding. And they confirmed the agreement after the trial court decided the issue of forum non conveniens against them by stipulating to the application of the January order to the remainder of the non-California cases.

**Judge Schulman Did Not Err In Failing to Require Defendants to Demonstrate California Was A "Seriously Inconvenient" Forum**

Plaintiffs next argue that Judge Schulman misapplied the standards, an argument that has two sub-parts. The first is that Judge Schulman applied the wrong legal standard by failing to require defendants to establish that California is a "seriously inconvenient" forum, an argument that relies on *Morris*, *supra*, 144 Cal.App.4th 1452, *Ford*, *supra*, 35 Cal.App.4th 604, and a Judicial Council comment to Civil Code of Procedure section 410.30.[9] That reliance is misplaced.

In *Morris*, Texas plaintiffs filed a complaint for survival and wrongful death against several defendants, including two California corporations, based on benzene exposure that took place first in California and later in Texas. *Morris* held that the trial court did not abuse its discretion in weighing the *Stangvik* factors, concluding that California was a "seriously inconvenient forum," and granting the defendants' motion to stay the action

---

[9] This is the comment: "Within those limits [under the due process clauses of the Fifth and Fourteenth Amendments], the owner of a transitory cause of action will often have a wide choice of forums in which to bring his action. Some of these forums may have little relation either to the parties or to the cause of action and suit in them may increase greatly the burden to the defendant of making a defense. Under the doctrine of inconvenient forum, a court, even though it has jurisdiction, will not entertain the suit if it believes that the forum of filing is a seriously inconvenient forum for the trial of the action."

in favor of plaintiffs' previously filed Texas action. (*Morris*, at pp. 1463–1468.) Setting forth some law and "some general principles," *Morris* stated both that "[t]he ultimate question is whether the balancing of the *Stangvik* factors shows that California is a seriously inconvenient forum" (citing to *Ford*), and that "[a] plaintiff's choice of forum 'is entitled to great weight even though the plaintiff is a nonresident' " (again citing to *Ford* and also to *Hansen v. Owens–Corning Fiberglas Corp.* (1996) 51 Cal.App.4th 753, 760 (*Hansen*).) (*Morris*, *supra*, 144 Cal.App.4th at pp. 1464, 1465.) *Morris* ultimately upheld the stay at issue in that case, so its holding does not assist plaintiffs. But more to the point, *Morris* did not engage in any discussion, let alone analysis, of whether defendants must show that California is a "seriously inconvenient forum." And the *Ford* case on which it primarily relied for that proposition does not support that proposition. *Morris* and *Ford* are not persuasive. *NFL* and *Fox Factory* are.

The court in *NFL, supra,* 216 Cal.App.4th 902, considered at length the question of whether defendants must show that California is a "seriously inconvenient" forum. (*Id*. at pp. 930–933.) There, the National Football League, an unincorporated association headquartered in New York City, sought declaratory relief regarding the coverage duties of some 32 insurer defendants, with all the same entities subject to parallel actions in the New York state courts. (*Id*. at pp. 906, 919–922.) The trial court stayed the case. And the Court of Appeal affirmed. (*Id*. at pp. 939–940.) Doing so, *NFL* conducted an exhaustive review of the "seminal forum non conveniens case law," the codification of the doctrine in Code of Civil Procedure section 410.30, and the case law both preceding and following *Stangvik*, the case it described as the "leading California Supreme Court case in the era subsequent to the enactment of Code of Civil Procedure section 410.30." The

court also discussed *Ford* and *Morris*, and rejected the NFL's argument that defendants were required to show that California was a "seriously inconvenient" forum. (*NFL*, *supra*, 216 Cal.App.4th at pp. 922–933.) This is how the court put it:

"NFL's contention that the moving party's burden of proof in a forum non conveniens motion includes proving California is a 'seriously inconvenient' forum also relies heavily on the *Ford* case . . . . [I]n *Ford* the Court of Appeal overturned a trial court dismissal of a coverage action filed by a nonresident corporate plaintiff where the underlying issue was liability for cleaning up polluted California properties where the plaintiff and its subsidiary had operated for lengthy periods in the recent past. The defendants were various insurance carriers, also not California residents. (*Ford*, *supra*, 35 Cal.App.4th at pp. 607–610.) The Court of Appeal reversed, in light of a 'wealth of factors favoring California as a forum' (*id*. at p. 618), including the fact that plaintiff Ford was a California taxpayer, employer and property owner, and the polluted properties were in California (*id*. at pp. 612–613). In imposing the questionable 'strong presumption' standard discussed above, the court summarized the moving party's burden of proof in the following language: 'The analysis . . . must start from the premise that defendants bore the burden of producing sufficient evidence to overcome the strong presumption of appropriateness attending plaintiff's choice of forum . . . . [T]he inquiry is not whether Michigan provides a *better* forum than does California, but whether California is a *seriously inconvenient* forum. (*Northrop Corp. v. American Motorists Ins. Co.* [(1990)] 220 Cal.App.3d [1553,] 1561.)' (*Ford*, *supra*, at p. 611.)" (*NFL*, *supra*, 216 Cal.App.4th at p. 930.)

*NFL* noted that "one searches the *Northrop* opinion in vain for the words 'seriously inconvenient' " (*NFL, supra,* 216 Cal.App.4th at pp. 930–931), and observed that there was a "conspicuous absence of a line of California cases culminating in the 'serious inconvenience' standard pronounced by the court in *Ford,*" which language has never appeared in a California Supreme Court opinion. (*NFL, supra,* 216 Cal.App.4th at p. 932.)

Following all that, *NFL* concluded: "[W]e find the *Ford* decision questionable and in any event inapposite," because the present case did not involve a dismissal order adverse to a California resident. (*NFL, supra,* 216 Cal.App.4th at p. 933.) The court "respectfully disagree[d] with . . . *Morris* and *Hansen* to the extent that they impose the 'seriously inconvenient' burden on parties moving for a mere stay based on forum non conveniens." (*Ibid.*) And in a footnote, the *NFL* court added: "In the absence of authority from our Supreme Court we question whether the 'serious inconvenience' terminology properly describes a moving party's burden of proof, even for dismissal motions against resident plaintiffs. The tenor of the *Archibald* [*v. Cinerama Hotels* (1976) 15 Cal.3d 853] and *Stangvik* opinions and cases closely following them suggest to us that all relevant circumstances bearing on the forum non conveniens calculus, including residence of the parties, should simply be considered by the trial court as part of the weighing and balancing process." (*NFL, supra,* 216 Cal.App.4th at p. 932 fn. 14.)

Likewise persuasive is *Fox Factory, supra,* 11 Cal.App.5th 197. Plaintiff there was a Canadian citizen injured while cycling in Canada, and filed suit against Fox Factory, a California corporation, alleging that his injury was caused by defective parts manufactured by Fox. The next day, he filed an action in British Columbia against certain other defendants based on the same injuries. (*Id.* at pp. 200–201.) Fox moved to dismiss or stay the

32

California action on the ground of forum non conveniens.  Relying on *Ford*, the trial court denied the motion, concluding that California was not a "seriously inconvenient forum."  (*Fox Factory*, *supra*, 11 Cal.App.5th at p. 202.)

The Court of Appeal granted Fox Factory's petition for writ of mandate, holding that the trial court erred in requiring it to demonstrate the California was a seriously inconvenient forum.  (*Fox Factory*, *supra*, 11 Cal.App.5th at pp. 205–208.)  The court observed that *NFL* "offers a more factually analogous and more cogent analysis than that of *Ford*" (*id*. at p. 206) in concluding that the seriously inconvenient forum standard is inapplicable to a nonresident plaintiff, going on to saying this:  "We likewise reject plaintiff's implicit suggestion that in every case great weight is required to overcome a nonresident plaintiff's forum choice.  Even if we were reviewing a *dismissal* order in a suit brought by a *California* resident—we would not subscribe to the analysis employed in *Ford*.  And plaintiff's position is all the more untenable in this case, as he is not even a United States citizen, a distinction highlighted in *Stangvik*.  The superior court therefore erred in imposing a burden on Fox to show that California is a *seriously* inconvenient forum in order to obtain a dismissal or stay under the forum non conveniens doctrine."  (*Id*. at p. 207.)

We find the *NFL* decision persuasive, and agree with the *Fox Factory* court that *NFL* "offers a more factually analogous and more cogent analysis than that of *Ford*."  (*Fox Factory*, *supra*, 11 Cal.App.5th at p. 206.)

This is how the leading practice commentary describes the law:  "To the extent [the 'seriously inconvenient'] standard is appropriate (see *Comment immediately below*), it applies only when defendant seeks *dismissal* of the action on forum non conveniens grounds. It does not apply when defendant

seeks a *stay* of the action.  (*National Football League v. Fireman's Fund Ins. Co., supra*, 216 Cal.App.4th at 933–934, . . . .)

"***Comment***:  The court in *National Football League, supra*, carefully traced the development of the 'seriously inconvenient' standard and concluded it was questionable whether that standard 'properly describes a moving party's burden of proof, even for dismissal motions against resident plaintiffs.'  Rather, the court should take into consideration all relevant factors, including plaintiff's residence.  (*National Football League v. Fireman's Fund Ins. Co., supra*, 216 Cal.App.4th at 932.)"  (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2023) ¶ 3:408.8.)

Plaintiffs attempt to distinguish *NFL* on the ground it involved a stay, whereas they contend that Judge Schulman's order in this case had the "legal effect" of a dismissal.  Plaintiffs argue that even though the final paragraph of Judge Schulman's order concludes "[d]efendant's motions to stay both actions are granted," the motions were "in legal effect, were motions to dismiss" because the cases were already stayed by the coordination order and because "the court then proceeded to dismiss the actions."  But Judge Schulman did not "proceed[] to dismiss the actions."  To the contrary, he entered the parties' agreed-upon order providing that "each of the Non-California Cases is hereby stayed pursuant and subject to the terms of the FNC Order," that "[o]n the 30th day after a plaintiff re-files in an alternative forum, the stay set forth in the preceding paragraph shall  convert to an order of dismissal with prejudice," and that "[w]ith respect to any plaintiff who has not re-filed in an alternative forum within 180 days after the date of entry of this Order, or has not sought and obtained an extension for good cause as set forth in paragraph six above, the stay set forth in the preceding paragraphs

shall convert to an order of dismissal with prejudice." It was the parties' agreed-upon order that provided for the possible dismissal of the actions—not Judge Schulman's ruling.

In addition to being unsupported by the authorities plaintiffs rely on, imposing the "seriously inconvenient" burden on Uber would be inconsistent with *Stangvik*'s description of one of the bases for the forum non conveniens doctrine: avoiding " 'an unchecked and unregulated importation of transitory causes of action for trial in this state." (*Stangvik*, *supra*, 54 Cal.3d at p. 751; see *Van Keulen v. Cathay Pacific Airways, Ltd.* (2008) 162 Cal.App.4th 122, 126, fn.2 [noting that where "plaintiffs were not California residents at the time that their claim arose, but subsequently became California residents prior to the time suit was filed, 'serious issues as to forum shopping' had been raised"]; *Henderson v. Superior Court, supra*, 77 Cal.App.3d 583, 598 [reversing and ordering that action be dismissed on forum non conveniens grounds where "plaintiff . . . had no connection with California at the time her cause of action matured" but subsequently moved to California].)

**Judge Schulman Did Not Err In Failing to Presume that California Is a Convenient Forum**

The other sub-part of plaintiffs' argument is that Judge Schulman applied the wrong standard—at least with respect to Jane Doe WHBE 3—in failing to acknowledge that a "California plaintiff's choice of forum is entitled to a presumption of convenience," apparently relying on *Stangvik*'s statement that "[m]any cases hold that the plaintiff's choice of a forum should rarely be disturbed unless the balance is strongly in favor of the defendant," ignoring, as *Stangvik* went on to note, "the reasons advanced for this frequently reiterated rule apply only to residents of the forum state." (*Stangvik*, *supra*, 54 Cal.3d at p. 754.) Plaintiffs argue that Judge Schulman was required to attach a presumption of convenience to California because it was Uber's

residence and that, by acknowledging this presumption but finding that it was not "especially strong," Judge Schulman failed to apply the correct standard and thereby abused his discretion.

Judge Schulman expressly found that Jane Doe WHBE 3's choice of a California forum was "entitled to some deference in the analysis," and cited the language from *Stangvik* on which plaintiffs rely, stating that because California was defendants' state of incorporation and principal place of business, it was a "presumptively convenient forum." (*Stangvik*, *supra*, 54 Cal.3d at p. 755.) But he also quoted *Stangvik*'s further holding, that "this presumption is not conclusive" (*Stangvik*, *supra*, 54 Cal.3d at p. 756), and that "[a] resident defendant may overcome the presumption of convenience by evidence that the alternate jurisdiction is a more convenient place for trial of the action." (*Ibid*., fn. omitted.) And here it was.

The presumption in this case was overcome by other evidence, including that each of the three public interest factors "weigh heavily in favor of transfer," and that they "overwhelmingly apply here in favor of granting Uber's motions as to both cases." So, even attaching a presumption of convenience to a California forum, after weighing and balancing the relevant factors, Judge Schulman found that "the balance is strongly in favor of the defendant"—a conclusion to which we owe "substantial deference." It was not an abuse of its discretion.

**Plaintiffs' Reliance on the Coordination Order Has No Merit**

Judge Schulman concluded that he found "more persuasive" the view that the cases against Uber should be viewed "as individual sexual assault/misconduct cases in which Plaintiffs claim Uber is vicariously liable due to its deficient safety practices," as opposed to "corporate misconduct cases in which the individual Plaintiffs' claims are, in effect, merely illustrative of their larger claims." Plaintiffs argue that this holding failed to

"accord the coordination order proper deference" and, citing principles of collateral estoppel, failed to give effect to the coordination court's finding that "*forum non conveniens*, choice of law, and liability determinations" were not "unavoidably individualized," but rather that "liability questions center on [Uber], not its drivers."

While Uber does not raise the point, we begin by noting that there is a serious question as to whether the argument has been preserved, as nowhere below—not in the joint case management statement, not in their oppositions to Uber's motion—did plaintiffs make the argument they make here. Plaintiffs' brief asserts that they "argued" that the coordination order "governed" (AOB 45, citing to AA 1636 and AA 1671, a page from each of the oppositions below). While Jane Doe LSA 35's opposition briefly discussed the coordination order and asserted that it "issued findings which are pertinent here," neither brief asserted that the order "governed." Neither brief asserted any claim of "proper deference." And, as plaintiffs expressly admit, collateral estoppel is nowhere mentioned in either opposition. In any event, the argument cannot prevail.

" 'In general, whether a prior finding will be given conclusive effect in a later proceeding is governed by the doctrine of issue preclusion, also known as collateral estoppel.' [Citation.] 'The doctrine of collateral estoppel, or issue preclusion, is firmly embedded in both federal and California common law. It is grounded on the premise that "once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed." [Citation.] "Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." ' [Citation.]

" 'As traditionally understood and applied, issue preclusion bars relitigation of issues earlier decided "only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." ' [Citation.] 'The party asserting collateral estoppel bears the burden of establishing these requirements.' " (*People v. Curiel* (2023) 15 Cal.5th 433, 451–452.)

Plaintiffs cite nothing supporting any collateral estoppel effect of a coordination order. And the parties dispute whether the issues decided by the coordination court and Judge Schulman were "identical," and whether the coordination action was a "former proceeding." But there is a more fundamental problem—collateral estoppel cannot apply. As this very court held in *Lennane v. Franchise Tax Board* (1996) 51 Cal.App.4th 1180, 1185 (*Lennane*): "The doctrine of res judicata fails because, as [the Franchise Tax Board] observes, the first ruling was not in a *former* action (*Panos v. Great Western Packing Co.* (1943) 21 Cal.2d 636, 637–638; *Levy v. Cohen* (1977) 19 Cal.3d 165, 171, a requirement which would also apply should we view the issue one of 'collateral estoppel' (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 910)."

Citing *Lennane* and numerous other authorities, this is how Witkin puts it: "(2) *Earlier Ruling in Same Case Cannot Be Preclusive.* The preclusion doctrines give conclusive effect to a former judgment only when the former judgment was in a different action; an earlier ruling in the same

action cannot be preclusive, although it may be 'law of the case' if an appellate court has determined the issue. [Citations.]" (7 Witkin, Cal. Procedure (6th ed. 2024) Judgment, §362.)

Finally, on this issue, we note that even if Judge Schulman erred—and plaintiffs have not shown he did—the error was harmless.

"[A]rticle VI, section 13 [of the California Constitution] prohibits a reviewing court from setting aside a judgment due to trial court error unless it finds the error prejudicial." (*People v. Chun* (2009) 45 Cal.4th 1172, 1201; accord, *TriCoast Builders, Inc. v. Fonnegra* (2024) 15 Cal.5th 766, 786; *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108.) Plaintiffs bear the burden of showing such prejudice (*Citizens for Open Government v. City of Lodi* (2012) 205 Cal.App.4th 296, 308), a burden that requires them to show " 'it is reasonably probable that a result more favorable to [them] would have been reached in the absence of the error.' " (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.)

Here, Judge Schulman expressly stated that he "need not resolve" whether the private interest factor concerning the location of evidence and witnesses weighed in favor of transfer because "the public interest factors weigh heavily in favor of transfer" and "overwhelmingly apply here in favor of granting Uber's motions as to both cases." So, even if Judge Schulman had afforded preclusive effect to the coordination court's view that "liability questions center on [Uber], not its drivers," and therefore concluded that the location of witnesses and evidence weighed against granting the motions, plaintiffs have failed to demonstrate a reasonable probability of a different result. (See *American Federation of State etc. Employees v. County of Los Angeles* (1983) 146 Cal.App.3d 879, 887 [affirming trial court despite

39

erroneous collateral estoppel ruling where reviewing court "view[ed] the error as harmless"].)

**We Decline to Exercise Our Discretion to Consider Plaintiffs' Argument Based on Uber's Terms of Use**

Finally, and conceding that they make the argument for the first time on appeal, plaintiffs argue that Uber's terms of use require it to honor plaintiffs' choice of forum. The argument relies on section 2, particularly sections 2(a) and 2(b), from one of the versions of its terms of use Uber attached to its opposition to the motion for coordination. Section 2 is entitled "Arbitration Agreement," and section 2(a) provides that "Except as expressly provided below in Section 2(b), you and Uber agree that any dispute, claim or controversy in any way arising out of or relating to . . . (iii) incidents or accidents resulting in personal injury that you allege occurred in connection with your use of the Services, whether the dispute, claim or controversy occurred or accrued before or after the date you agreed to the Terms, . . . will be settled by binding arbitration between you and Uber, and not in a court of law." And section 2(b), titled "Exceptions to Arbitration," provides: "Notwithstanding the foregoing, this Arbitration Agreement shall not require arbitration of the following claims: . . . (ii) individual claims of sexual assault or sexual harassment occurring in connection with your use of the Services; . . . . Such claims may be brought and litigated in a court of competent jurisdiction by you on an individual basis only . . . . Where your claims are brought and litigated to completion on such an individual basis in a court of competent jurisdiction, Uber agrees to honor your election."

Plaintiffs argue that the statement "Uber agrees to honor your election" means that "Uber has promised to 'honor' plaintiffs' choice of forum." They concede that they have not previously made this argument, but assert that

we should exercise our discretion to address the issue for the first time on appeal because the interpretation of a writing is a pure question of law that does not turn on the resolution of any disputed facts. We do have discretion to address pure questions of law, but we will not do so here, especially because we do not agree the issue presents undisputed facts. (See *Kucera v. Lizza* (1997) 59 Cal.App.4th 1141, 1150.)

In opposing plaintiffs' motion for coordination, Uber attached and relied on two versions of its terms of use, one "last modified" on July 12, 2021, and another "effective" December 13, 2017. On reply, plaintiffs argued that the July 21, 2021 version of the terms of use was "prepared *after* these cases were all filed and *after* the petition for coordination was already filed," and that other courts had found Uber's terms of use to be unenforceable contracts of adhesion. After the coordination hearing, plaintiffs filed a supplemental brief, stating that "Uber filed a declaration with six Terms of Use attached, five days after our reply was filed and only two days before the hearing," and arguing that "(1) a careful reading of all the Terms of Use reveals that they are ambiguous in a manner that would be resolved against Uber and do not stand for the proposition that Uber asserts; (2) all the Terms of Use on their face are a contract of adhesion; (3) all the Terms of Use violate public policy, and (4) Uber has not shown that any [plaintiff] made a knowing and intelligent waiver of the right to seek coordination in the event of sexual assault."

These six versions of the terms of use are not in the record before us. And given that plaintiffs argued below that the version on which they now rely did not apply to them and was in any event unenforceable, we decline to exercise our discretion to consider plaintiffs' new argument.

## DISPOSITION

The orders appealed from are affirmed.  Respondents shall recover their costs on appeal.

_____

Richman, J.

We concur:

_____

Stewart, P.J.

_____

Miller, J.

*Jane Doe WHBE 3, et al. v. Uber Technologies, Inc. Et al.* (A167458, A167709)

| | |
|---|---|
| Trial Court: | San Francisco County Superior Court; |
| Trial Judge: | Honorable Ethan Schulman; |
| Attorney for Plaintiffs and Appellants, Jane Doe WHBE 3, et al: | Alan Charles Dell'Ario, Attorney at Law; Williams, Hart & Boundas, John Eddie Williams, Jr. (pro hac vice), John Boundas (pro hac vice), Brian Abramson (pro hac vice), Margaret Leococke (pro hac vice), Walt Cubberly; Levin Simes, William A. Levin; |
| Attorney for Defendants and Respondents, Uber Technologies, Inc, et al.: | Paul, Weiss, Rifkind, Wharton & Garrison, Kannon K. Shanmugam (pro hac vice), Randall S. Luskey, Robert Atkins (pro hac vice) Kyle Smith (pro hac vice). |